## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

EVAN DENHAM, Individually and on behalf
of all Others Similarly Situated,

        Plaintiff,

   v.

EIGHT ELEVEN GROUP, LLC f/k/a
TECHNICAL YOUTH, LLC,

        Defendant.

Civil Action No. 3:22-cv-00531-JAG

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
## FOR SETTLEMENT APPROVAL

Subject to Court Approval, Plaintiff Evan Denham ("Plaintiff"), individually and on behalf

of all others similarly situated (the "Settlement Collective"), and Eight Eleven Group, LLC f/k/a

Technical Youth, LLC ("Defendant"), have settled this putative wage and hour collective action

for a maximum total amount of $318,000.00.  The settlement satisfies all criteria for approval of a

Fair Labor Standards Act ("FLSA") collective action settlement because it is a fair and reasonable

resolution of a bona fide dispute and was the result of arm's-length settlement negotiations

conducted by counsel well-versed in wage and hour law.

For the reasons set forth below, Plaintiff respectfully requests, without opposition from

Defendant, that the Court enter an order approving the $318,000.00 settlement detailed in the Joint

Stipulation and Settlement Agreement (the "Agreement") along with all exhibits thereto which are

attached as Exhibit A.[1]  The parties have structured the Agreement and settlement process as an opt-in FLSA collective settlement as they believe that to be the most efficient vehicle for a speedy and efficient resolution of this matter.[2]

**PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS**

**I.      Factual Allegations**

Plaintiff and the Settlement Collective are current and former employees of Defendant who worked for Defendant as exempt computer technicians or in non-exempt positions at client sites in multiple states who were paid on an hourly basis and who were also allegedly paid an hourly *per diem* separate and apart from their regular hourly pay.  Plaintiff alleged that the *per diems* constituted wages and that Defendant thus failed to properly pay overtime associated with *per diem*s. Defendant is a technology staffing provider based and headquartered in Indiana.  Defendant provides technology staffing in several industries including healthcare.  When Defendant is hired on to a job, it sometimes provides staffing directly to the client site, often necessitating Defendant's employees spend time working from client sites far away from their homes. Plaintiff alleged that in addition to wages, Defendant also paid hourly *per diems* for such work.

Plaintiff alleges that Defendant violated the FLSA and Virginia state law by excluding the hourly *per diems* from the calculation of owed overtime. Plaintiff contends that the hourly *per diems* were regular wages and should have been treated as such.  The Defendant denied, and continues to deny, all allegations of violation(s) of law or wrongdoing and contends its provision of *per diem* payments to be in accord with all applicable laws.

---

[1] Consistent with the Agreement, Defendant does not oppose the instant motion.  Plaintiff acknowledges, however, that in agreeing not to oppose this motion Defendant does not necessarily agree with all of the factual and legal characterizations presented herein.

[2] At the time of settlement Plaintiff had not yet moved for conditional certification.

2

**II.    Overview of Investigation, Litigation, and Settlement Negotiations**

Before filing this lawsuit, Plaintiff's Counsel conducted a thorough investigation into the merits of the potential claims and defenses.  Plaintiff's Counsel focused their investigation and legal research on the underlying merits of the potential collective/class action members' claims, the propriety of various *per diem* systems, the damages to which putative plaintiffs may be entitled, and the likelihood of collective and/or class action certification.  Plaintiff's Counsel obtained and reviewed documents from the Plaintiff, including pay stubs, tax forms, and various emails and contracts.  Plaintiff's Counsel also conducted in-depth interviews with the Plaintiff.

On July 29, 2022, Plaintiff filed suit alleging violations of the FLSA and Virginia Code Sections 40.1-29 and 40.1-29.2.  Plaintiff filed the FLSA count as a collective and the Virginia counts as classes.  Following discussion with counsel for Defendant, Plaintiff's Counsel agreed to amend the complaint to restate the Virginia counts as collective, rather than class action, claims. After being granted leave by the Court, the Amended Complaint was filed September 27, 2022. Coincident to their discussions regarding amendment of the Complaint, the parties also began discussing whether the matter was one where early resolution should be explored.  Counsel jointly created a framework whereby the parties would request a stay of the matter and agree to toll the claims of any putative plaintiffs who might ultimately join this action pending the result of mediation. Key to the framework was the Defendant's provision of anonymized data necessary for Plaintiff to construct a damages model.  On October 6, 2022, the Court granted the parties' request for a stay.  Defendant subsequently provided Plaintiff with the needed data and the parties convened for a private mediation with Eric Paltell, Esq. on November 29, 2022, and agreed to settlement in principle the following day.  The parties then executed a term sheet on December 2, 2022, and have since executed the Settlement Agreement now before the Court.

## SUMMARY OF THE SETTLEMENT TERMS

### I.     The Settlement Fund

Defendant has agreed to pay a maximum $318,000.00 to settle the claims in this Action, which shall be used to provide for: (i) Gross settlement payments to eligible current and former employees who wish to join the settlement up to a total aggregate amount of $179,465.70 in the event that all eligible individuals join the settlement; (ii) a General Release payment to the Named Plaintiff in the amount of $5,000.00; (iii) Plaintiff's Attorneys' Fees and Costs of $111,300.00 and $2,930.30, respectively; (iv) Settlement administration costs of $19,304.00. Finally, the Settlement Fund also includes the employer's share of applicable employment taxes in an amount dependent upon the value of the settlement payments allocated to those individuals who choose to join the settlement.

### II.     Eligible Employees

The parties have agreed and confirmed that there are 188 former and current employees eligible to participate in the settlement.  Plaintiff's Counsel has determined unique estimated allocations for each of them using a *pro rata* calculation based off of Plaintiff's Counsel's belief about each individual's maximum damages based on actual time and pay data and Plaintiff's theory of liability in this case. Plaintiff's Counsel has provided a copy of the estimated allocations to Defense counsel for approval consistent with the Settlement Agreement.  The estimated average *pro rata* settlement allocation is $954.60.

### III.     Settlement Notice and Check Distribution Process

All mailings of settlement notices and claim and release forms will be made by American Legal Claims Services, LLC (the "Settlement Administrator") according to the timeline set out in the Settlement Agreement.  The Settlement Administrator will also be responsible for establishing

the Qualified Settlement Fund ("QSF") into which Defendant will deposit any applicable settlement amounts and from which all settlement payments will be made. Once the settlement is approved, the Settlement Administrator will be responsible for disbursing payments to Plaintiff for his general release, disbursing payment for attorneys' fees and costs to Plaintiff's Counsel, and for sending individualized Notices and Claim and Release forms to potential plaintiffs. Potential plaintiffs wishing to participate in the settlement will execute their releases and return them to the Settlement Administrator. After the close of the notice period, the Defendant will fund the QSF in the amount necessary to fund the remaining amount of the settlement. The Settlement Administrator will then send out settlement checks to those individuals who choose to participate in the settlement.

## IV.     Release

Only individuals who affirmatively elect to participate in the settlement will release any claims. The release is properly tailored to only release wage & hour claims. Any individual who chooses not to sign their release will not be a party to the settlement.

## V.     Settlement Amounts

As explained above, with the exception of $5,000.00 set aside as general release payment to Plaintiff, each eligible individual has been allocated a proportionate share of the Maximum Settlement Fund pursuant to an allocation formula based on Plaintiff's Counsel's assessment of their potential damages. The average settlement will pay each individual a gross amount of $954.60 (net of attorneys' fees and costs, general release payment, and settlement administration costs) with some individuals receiving gross settlements of over $10,000.00.

## VI.     General Release Payment

Under the Settlement Agreement, Named Plaintiff seeks Court approval for general release

payment of $5,000 in recognition his executing a general release and for making additional promises as set forth in the Agreement. Plaintiff's Counsel further believes the Named Plaintiff deserves the general release payment for services he rendered to the Putative FLSA Settlement Collective in obtaining the benefits of the settlement as well as the risks he took in doing so. The Named Plaintiff assisted Counsel in the investigation of the claims at issue, participated in settlement discussions, responded to points raised by Defendant, and provided vital assistance that helped Plaintiff's Counsel achieve this settlement for the benefit of the greater group.

## VII.     Attorneys' Fees and Litigation Costs

Under the Settlement Agreement, subject to Court approval, Plaintiff's Counsel will receive 35% of the Gross Settlement Amount as attorneys' fees, totaling $114,230.30, inclusive of ($2,930.30) reimbursement of out-of-pocket costs.

<strong><u>ARGUMENT</u></strong>

### I.   The Settlement Meets the Requirement for Approval of an FLSA Settlement.

Collective actions under the FLSA Section 216(b) are fundamentally different than class actions raised under Fed. R. Civ. P. 23. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). The due process concerns present in class action litigation are not present in collective actions brought under the FLSA because there are no absent class members who will be bound to a release of their claims. *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 L 2344949, at *1 (N.D. Ill. May 15, 2015). Instead, only eligible settlement participants who *affirmatively elect* to participate in the settlement release claims against the defendant. Nor is a second-step fairness hearing required for FLSA Settlements. Bloomberg BNA, The Fair Labor Standards Act, Ch. 18.VI.A.1, p. 35. (4th ed. 2020) ("A collective action settlement may be brought to the court on a single motion to approve the settlement and enter a stipulated judgment."); *Moore v. Ackerman*

6

*Inv. Co.*, No. C 07-3058, 2009 WL 2848858, at *2 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b).").

Here, the parties' settlement should be approved because it is "a fair and reasonable resolution of a bona fide dispute." *Lynn Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F. 2d 1350, 1354-55 (11th Cir. 1982). When the parties' settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute" approval of the settlement will "promote the policy of encouraging settlement of litigation." *Id*. at 1354. There is a "strong presumption" in favor of approval. *Hamilton v. Frito-Lay, Inc.*, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), *report and recommendation adopted*, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007).

## A.    The Settlement is Fair and Reasonable.

The factors to consider when assessing whether an agreement is fair and reasonable are: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *See Lunsford v. Woodforest Nat'l Bank*, No. 1:12-CV-103-CAP, 2014 WL 12740375, at *7 (N.D. Ga. May 19, 2014) *citing Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F. 3d 1527, 1531 n.6 (11th Cir. 1994). All these factors point toward approval in this matter.

1.      **There is No Evidence of Fraud or Collusion.**

The parties negotiated the Settlement at arm's-length first without, and then with, the assistance of an experienced and well-regarded neutral mediator.  Each eligible individual will decide whether to participate in the settlement, with the full benefit of the Settlement Notice and Claim and Release form.  There was no collusion.

2.      **Settlement Averts Years of Complex and Expensive Litigation.**

This lawsuit involves allegations of unpaid overtime and regular time under the FLSA and/or Virginia state law.  There are myriad issues that would have required significant litigation had the matter not settled.  Such issues include, but are not limited to, the ongoing (in)validity of Defendant's practices with respect to *per diems* and Defendant's affirmative defenses under the computer professional or other white-collar exemptions under the FLSA.  Moreover, Defendant indicated it would challenge conditional certification meaning the parties would have expended significant time and energy debating that issue as well.

If the litigation had progressed, it would have been complex, expensive, and protracted. The parties would likely have had disputes through factual discovery and certification, and eventually challenged one another in briefing as to both liability and damages.  Moreover, either side likely would have appealed any key judgment.  Settlement provides significant monetary relief to potential plaintiffs now rather than the risk of an uncertain and unpromised resolution of contested issues. Settlement further provides the Defendant with peace of mind and certainty as to exposure resulting from Plaintiff's allegations.

3.      **Settlement Only Occurred After a Thorough and Complete Review of the Data.**

Early on Defendant produced relevant data for all members of the putative collective. Plaintiff's Counsel used this data to construct a damages model which allowed the Plaintiff to

communicate his estimate of Defendant's maximum exposure prior to the mediation. *Id*. As a result, the parties had all information that they needed to evaluate the strength of their claims. This factor supports granting approval of the Settlement.

### 4.    Plaintiff Faced Obstacles Prosecuting the Action.

The "likelihood and extent of any recovery from the defendants absent ... settlement is another important factor in assessing the reasonableness of a settlement." *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-CV-103-CAP, 2014 WL 12740375, at \*8 (N.D. Ga. May 19, 2014). As stated above, recovery in this matter was not guaranteed. Plaintiff faced disputes regarding overtime compensability of *per diems*, whether liquidated damages were appropriate, the applicability of willfulness, and whether this action could proceed to trial on a collective action basis. In the face of uncertainty as to the facts and the amount of damages, it would be "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers." *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984).

### 5.    Plaintiff and the Settlement Collective Members' Benefits are Reasonable Compared to the Range of Possible Recovery.

The Settlement has the effect of (1) providing monetary relief to Settlement Collective Members who choose to opt into the Action, (2) in exchange for an appropriate narrow and limited release of wage & hour claims, and (3) eliminating the inherent risks both sides would bear if this collective action litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d 1350 at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness).

The Settlement compensates individuals who choose to participate in the Settlement and eliminates the possibility of a loss on a motion for collective/class certification, loss on summary

judgment, loss at trial, or loss on appeal. Consequently, this Settlement brings value and certainty now, as opposed to years from now. The substantial benefit that Settlement Collective Members will immediately receive is a significant factor weighing in favor of approval of the proposed Settlement.   The estimated settlement amounts vary widely, but participating individuals are eligible for an average gross settlement of approximately \$954.00 per person, with many receiving significantly more.   Plaintiff's Counsel estimated potential average best day damages would not have exceeded \$600,000.00[3], while Defendant believes its exposure, while costly to achieve because of the expense of litigation, was low.   Under any theory, potential plaintiffs are receiving a significant settlement given the elimination of risk of a bad litigation result.

### 6.        The Opinion and the Named Plaintiff Favor Approval.

On settlement approval, "great weight" is given to the recommendations for counsel for the parties, particularly where counsel has "considerable experience." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989).   Plaintiff's Counsel are well-respected lawyers with a breadth of experience in the field of wage and hour law. They have litigated a number of small and large overtime cases against public entities and private corporations.

Plaintiff's Counsel relied on a substantial amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the Settlement. Based on Plaintiff's Counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour class actions, Plaintiff's Counsel's opinion is that the Settlement is fair, reasonable, and adequate.

---

[3]Plaintiff's estimate assumed an overtime rate based on a regular rate derived from payment for 40 hours, whereas Defendant would have argued the overtime rate, if any, was to be determined by including earnings over all hours. If Defendant were proven correct, Plaintiff's best day damages would be significantly lower.

**B.      The Settlement Resolves a Bona Fide Dispute.**

Plaintiff alleged that he and others worked in excess of forty hours in one or more workweeks for which Defendant did not properly pay him overtime and regular wages relating to *per diem* payments in violation of the FLSA and Virginia state law. Plaintiff asserted these claims via his Complaint and Amended Complaint. Defendant denied the allegations and provided argument in opposition to Plaintiff's unpaid overtime allegations.

Plaintiff believes that if his allegations were ultimately shown to have been correct, Defendant would have been faced with the prospect of a significant monetary verdict in favor of Plaintiff, as well as the obligation to pay litigation fees and costs. However, if Defendant's arguments were correct, Plaintiff faced the risk of a complete defense verdict and no recovery of any kind. Accordingly, the Court should conclude that a *bona fide* dispute between the parties existed.

**II.    The Proposed Settlement Agreement, Release, and Notice are Appropriate.**

For proposed collective settlements under the FLSA, it is necessary to provide potential members of the collective "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see generally* 29 U.S.C. § 216(b)

The Notice and Claim and Release forms clearly describe the terms of settlement, the relief available to Settlement Collective Members, and the procedures for and consequences of participating in the settlement. *See* Ex. A at Exhibits 2 and 4. The release at issue for Settlement Collective Members is appropriately tailored to release only those claims relating to hours worked or the (non)payment of wages. The Notice form also describes the fees and costs that Plaintiff's

Counsel is seeking. *See Id.* at Exhibit 2. That document further provides contact information for the Settlement Administrator and Plaintiff's Counsel.

**III. Plaintiff's Request for Attorneys' Fees and Costs Should Be Approved.**

The FLSA provides in part that "the court shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action." 29 U.S.C. § 216(b). The Settlement agreed to by the parties reflects this and rather than engaging in a time consuming and costly fee fight over the amount of attorneys' fees, the parties here were able to reach a resolution of the claim for attorneys' fees and costs.

The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a settlement agreement." *See Poulin v. General Dynamics Shared Res., Inc.*, 2010 U.S. Dist. LEXIS 47511 *4 (W.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)). When assessing the fairness of attorneys' fees pursuant to a court-ordered fee award, courts generally rely on the lodestar analysis. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992). However, assessing the fairness of attorneys' fees that are part of a negotiated FLSA settlement is not identical to the traditional lodestar analysis. *See Devine v. City of Hampton*, 2015 WL 10793424 at *3 (E.D. Va. Dec. 1, 2015). In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and use lodestar principals as a cross-check to assess fairness. *Id*.

Here, the parties negotiated at mediation that Collective Counsel's attorneys' fees would be set at $111,300.00, 35% of the Settlement Fund, plus out of pocket costs of $2,930.30, for a total amount of $114,230.30. This figure is in line with awarded attorneys' fees in other similar

collective/class action cases alleging the non-payment of overtime under the FLSA. *See, e.g., Winingear*, 2014 WL 3500996, at \*1 (awarding 38.44% ($1,230,250.00) in fees and costs on a $3,200,000 FLSA settlement); *Hall v. Dominion*, No. 3:18-cv-00321 (EDVA) Doc. 92 (approving 35% of the gross settlement amount); *Sziber,* 3:20-cv-117 (EDVA) Doc. 123 (approving 35% of the gross settlement amount); *Devine*, 2015 WL 10793424, at \*3 (finding 33.98% ($1,189,167.00) in fees and costs on a $3,500,000 FLSA settlement to be reasonable); *see also Gagliastre*, 2019 WL 2288441, at \*5 ("Fees awarded under "the percentage-of-recovery" method in settlements under $100 million have ranged from 15% to 40%"); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505 (M.D.N.C. 2018)(finding 33.39% percent award is within the range of percentages that have been approved in other cases in the Fourth Circuit); *Hooker v. Sirius XM Radio, Inc.*, No. 4:13-CV-003, 2017 WL 4484258, at \*2 (E.D. Va. May 11, 2017)(TCPA claim; awarding 35% fees).

Collective Counsel's attorneys' fees are part of the bargained-for settlement. The parties agreed to set Collective Counsel's fees at 35%. This is the same agreement that has been presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, at least in a class action context, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property*

*Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014); *Blanchard v. Forrest*, CIV. A. 93-3780, 1996 WL 28526 (E.D. La. Jan. 23, 1996) (overruling the magistrate's modification to consent judgment because courts lack authority to modify a settlement agreement).

"[A]ny process of judicial review and approval of stipulated attorneys' fees in the event of a settlement of civil rights litigation is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775 (8th Cir. 2018) (reversing district court's reduction of attorney fees from the agreed-upon settlement amount in an FLSA action). Additionally,Counsel's fee is reasonable in light of the fact that Plaintiff's fee agreements grant Counsel a 40% interest in the gross amount recovered.[4] The requested fee thus approximates "the market price for legal services." *See Sutton v. Bernard,* 504 F.3d 688, 692, 693-94 (7th Cir. 2007).

---

[4] Plaintiff's Counsel has voluntarily reduced its' sought fee to 35%. Plaintiff's Counsel's current lodestar is more than $56,000 and Plaintiff's current costs are $2,930.30. Plaintiff thus requests a modest multiplier of 1.99%. Courts in the Fourth Circuit and throughout the country have held that lodestar multipliers in this range (and higher) are reasonable. *See Kruger v. Novant Health, Inc*., No. 1:14CV208, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (approving fees at "3.69 times the lodestar. This multiplier is within the range of reasonableness, as courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee … Courts both within this Circuit and across the country routinely approve fee awards with higher lodestar multipliers.") (internal quotes omitted)(collecting cases); *Jones v. Dominion Res. Servs., Inc*., 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."; approving lodestar multiplier between 3.4 and 4.3); *Deloach v. Philip Morris Co.,* No. 00-1235, 2003 WL 23094907, at *11 (M.D.N.C. Dec. 19, 2003) (approving 4.45 lodestar multiplier); *Kelly v. Johns Hopkins Univ*., No. 1:16-CV-2835-GLR, 2020 WL 434473, at *7 (D. Md. Jan. 28, 2020) (approving lodestar multiplier of 2.45); *In re Genworth Fin. Sec. Litig*., 210 F. Supp. 3d 837, 845 (E.D. Va. 2016)(approving lodestar multiplier of 1.97 as "eminently reasonable."; "District courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2–3 times lodestar multipliers.") (collecting cases) (J. Gibney); *Domonoske v. Bank of Am.,* N.A., 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) (approving "lodestar multiplier of about 1.8, which is well within the normal range of lodestar multipliers.") (collecting cases); *Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015) (approving multiplier of 1.99); *Witt v. CoreLogic Saferent, LLC*, No. 3:15-CV-386, 2018 WL 1560069, at *4 (E.D. Va. Mar. 22, 2018)(approving multiplier of 2.24, noting "a multiplier of 2.24 is similar to those applied in similar cases.") (collecting cases) (M.J. Novak). Additionally, Plaintiff's Counsel expects to incur additional fees through the notice and administration period as they respond to the needs of the settlement administrator and settlement collective members. Plaintiff's current fee records or summary of same can be made available to the Court for *in camera* review should the Court wish to review them. Plaintiff can likewise submit declarations supporting their rates and experience if the Court requires.

Last, Plaintiff's Counsel believe that the requested fee is warranted in light of the results obtained for the members of the collective. "The result achieved by the attorneys for the class is often cited as one of the most significant factors in determining the reasonableness of a fee award." *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 761 (S.D.W. Va. 2009). As explained above, here Plaintiff's Counsel has achieved a result for Settlement Collective Members that Counsel believes is outstanding. Especially inasmuch as Defendant would have vigorously disputed that overtime was owed based on the *per diem* payments, would have asserted exemption defenses, would have disputed the appropriateness of liquidated damages, would have disputed the application of a three-year limitations period, and would have disputed that a collective action could be maintained through trial.

### III.    Plaintiff was Critical to the Resolution of the Claims and is Entitled to a General Release Payment.

Here, the Named Plaintiff requests a general release payment of $5,000 and has executed a general release in consideration for same. Plaintiff's Counsel also believes this payment also is justified by the actions Named Plaintiff undertook in the role of representative plaintiff. Plaintiff provided factual information to his Counsel and continually consulted with his Counsel regarding litigation strategy and settlement. In light of Plaintiff's efforts, the Settlement Collective Members as a whole receives the benefit of a $318,0000 Gross Settlement Amount on behalf of 188 individuals, with an average potential pretax settlement payment of approximately $954.00.

The requested General Release payment amount is equivalent to approximately 1.6% of the Gross Settlement Amount. This is a reasonable percentage, below the percentage routinely approved in wage and hour litigation. *See, e.g.*, *Soto,* 2018 WL 1875296, at *3 (approving a total of $15,500 in service awards, representing approximately 3.4% of the total $450,000 settlement amount); *Zolkos,* 2015 WL 4275540, at *3 (awarding a total of $144,000 in service awards,

representing approximately 4.3% of the guaranteed settlement amount of $3,350,000).

## CONCLUSION

This Settlement was reached after extensive settlement negotiations. The parties engaged in a thorough analysis of the facts and the data at issue and the Settlement provides Putative Settlement Collective Members with significant monetary relief. Because the Settlement is a fair and reasonable resolution of a *bona fide* dispute between the parties, it should be approved.

Dated:  February 16, 2023

Respectfully submitted,

*/s/ Zev Antell*

Harris D. Butler, III (VSB # 26483)
Craig J. Curwood (VSB # 43975)
Zev H. Antell (VSB # 74634)
BUTLER CURWOOD, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
804.648.4848
804.237.0413 (Facsimile)
harris@butlercurwood.com
craig@butlercurwood.com
zev@butlercurwood.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 16th day of February, 2023, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

*/s/ Zev Antell*

Zev H. Antell (VSB No. 74634)

16