# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

EVAN DENHAM, individually and on behalf
of all others similarly situated

        Plaintiff,

    v.

EIGHT ELEVEN GROUP, LLC f/k/a
TECHNICAL YOUTH, LLC,

        Defendant.

Civil Action No. 3:22-cv-00531-JAG

## JOINT STIPULATION AND SETTLEMENT AGREEMENT

Evan Denham ("Mr. Denham"), and his counsel of record (collectively "Plaintiff"), and defendant Eight Eleven Group ("EEG"), and their counsel of record (collectively "Defendant"), and subject to the terms and conditions hereof and final approval by the Court, hereby enter into this joint stipulation and settlement agreement ("Agreement"). This settlement is intended to fully, finally, and forever compromise, release, resolve, discharge, and settle the released claims subject to the terms and conditions set forth in this Agreement. The instant, above-captioned action shall be dismissed with prejudice upon final approval of this settlement by the Court.

## I.    RECITALS AND BACKGROUND

### A.    Nature and Procedural History of the Action

On July 29, 2022, Mr. Denham filed the instant litigation (the "Action"), bringing a putative collective action pursuant to 29 U.S.C. § 216(b) for alleged FLSA violations and a putative class action due to alleged violations of Virginia Code § 40.1-29.2, the Virginia Overtime Wage Act ("VOWA").

On September 27, 2022, Mr. Denham filed his First Amended Collective Action Complaint, amending his VOWA state law claims to allege only putative collective-action claims, as opposed to class-action claims. This is the operative complaint. In it, Plaintiff alleges EEG violated Sections 6, 7, and 15 of the FLSA by failing to pay Mr. Denham and Putative Collective Action Members one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek. Plaintiff further alleges similar violations of VOWA for failing to pay all overtime due under that statute. Mr. Denham also alleges that EEG impermissibly paid him and others an hourly *per diem*, which constituted wages and should have been included in their regular rate of pay when determining the amount of overtime owed.

1

**B.     Parties' Statements and Recognition of the Benefits of Settlement**

**1.     Plaintiff's Statement**

Plaintiff believes the claims asserted in the Litigation have merit under the FLSA and the VOWA.  Plaintiff recognizes, however, the cost and delay of continued proceedings necessary to prosecute the instant action against Defendant through the issuance of notice of collective action, discovery, decertification, dispositive motions, trial, and appeal.  Plaintiff has also taken into account the uncertain outcome and the risk of loss inherent in any litigation, especially in a complex collective action such as this.  Plaintiff believes that the settlement set forth in this Agreement confers substantial benefits on all Putative Collective Action Members and, based on his evaluation of the terms in this Agreement, has concluded that settlement is in the best interest of Mr. Denham and Putative Collective Action Members.

**2.     Defendant's Statement**

Defendant denies each and all of the claims alleged by Plaintiff in the Action.  Defendant expressly denies any and all charges of wrongdoing or liability alleged in the instant action.  To the contrary, Defendant contends that, in compliance with the FLSA and the VOWA, the Mr. Denham and all Putative Collective Action Members have been paid all wages due.  As a result, Defendant believes Plaintiff's claims for unpaid wages, liquidated damages, statutory penalties, pre-judgment interest, attorneys' fees, and costs will fail.  Defendant also denies that the asserted claims are appropriate for collective treatment under 29 U.S.C. § 216(b), except for purposes of settlement.  Nevertheless, Defendant has taken into account the uncertainty and risks inherent in any litigation and the fact that the conduct of the Action would be protracted and expensive.  Defendant has determined, therefore, that it is desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth in this Agreement.

## II.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED by and among the Plaintiff and Defendant, by and through their respective attorneys, that, subject to the approval of the Court, the Action will be finally and fully compromised, released, resolved, discharged, and settled, and will be dismissed with prejudice, subject to the terms and conditions of this Agreement, as follows:

### A.    Definitions

1.    **"Action"** refers to the above-captioned civil action filed on July 29, 2022, in the United States District Court for the Eastern District of Virginia, which is styled as *Denham v. Eight Eleven Group, LLC f/k/a Technical Youth, LLC*, No. 3:22-cv-00531-JAG.

2.    **"Approval Order"** means the order or statement of decision, if any, issued by the by the Court granting full and final approval of this settlement.

3.    **"Claim Form"** refers to the document, attached as Exhibit 4, which has been agreed to by the Parties and shall be submitted to the Court for approval in conjunction with Plaintiff's Unopposed Motion for Approval, and which includes a consent to participate in Mr. Denham's FLSA and VOWA claims, and which must be submitted by any Putative Collective Action Member in order for him or her to become a Participating Collective Action Member and be entitled to a Settlement Payment.

4.    **"Claim Period"** means the period of sixty (60) calendar days following the texting or emailing of the Notice of Settlement or, in instances when no cell phone or email address is available, the period of sixty (60) calendar days following the mailing of the Notice of Settlement, during which Putative Collective Action Members shall be permitted to postmark or email, the required Claim Form and I.R.S. Form W-9 to the Settlement Administrator.

5.      **"Court"** means the United States District Court for the Eastern District of Virginia or any other court taking jurisdiction over the Action.

6.      **"Defendant"** and/or **"EEG"** means Eight Eleven Group, LLC, including their past, present, or future officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, consultants, attorneys, fiduciaries, both individually and in their official capacities, employee benefits plans, insurers and reinsurers, and their respective successors and predecessors in interests, subsidiaries, corporate parents, sister companies, divisions, partners, and affiliated companies and/or organizations.

7.      **"Effective Date"** means the date by which all of the following have occurred:  (i) Mr. Denham, EEG, and counsel for the Parties have all executed this Agreement; (iii) this settlement has received approval from the Court; and (iii) the period for appealing the Court's final order approving the settlement expires without an appeal being filed, or if such an appeal is filed, the date on which the appeal is finally resolved and any further proceedings concluded, including any subsequent proceedings seeking review by the United States Supreme Court.  To the extent any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety, subject to the provisions and procedures set forth in Section II.AA, *infra*.

8.      **"Extended Claim Period"** means the additional forty-five (45) days Putative Collective Action Members shall have to postmark or email the Claim Form and I.R.S. Form W-9 to the Settlement Administrator following any reissuance of Notice of Settlement to a Putative Collective Action Member in the event that all forms of the original Notice of Settlement that are sent to them are returned to the Settlement Administrator as undeliverable.

9.    **"General Release Award"** refers to the Court-approved amount of up to $5,000.00 to be paid to Mr. Denham in exchange for: (i) the broader general release of claims detailed in, Section II.H.2, *infra*; (ii) his agreement not to appeal the Court's Order, as set forth in Section II.Y, *infra*; (iii) his agreement to keep all of the non-public terms of this Agreement confidential, as set forth in Section II.K.1, *infra*; and (iv) his agreement not to apply for future employment with Defendant, as set forth in Section II.L, *infra*.

10.    **"Gross Settlement Amount"** refers to $318,000.00, which is the total and maximum amount Defendant will be required to pay under this Agreement to completely resolve and settle the Action and the claims against Defendant set forth in the Release of Claims, in the event that all Putative Collective Action Members timely submit a Claim Form. The Gross Settlement Amount expressly includes, but is not necessarily limited to, the following elements: (i) cash Settlement Payments to Participating Collective Action Members as described in this Agreement; (ii) Defendant's share of payroll taxes associated with such Settlement Payments; (iii) the General Release Award to Mr. Denham, as described herein; (iv) Plaintiff's Attorney's Fees and Expenses, as described herein; and (v) the expenses of the Settlement Administrator.  In no event shall Defendant be required to pay more than the Gross Settlement Amount in connection with this Agreement.

11.    **"Mr. Denham"** means Evan Denham, individually and his respective past, present, or future agents, heirs, assigns, and their respective successors and predecessors in interests.

12.    **"Net Settlement Amount"** refers to the portion of the Gross Settlement Amount available for distribution as cash Settlement Payments to Mr. Denham and Participating Collective Action Members, including the employer's share of any payroll taxes associated with

those payments.  The Net Settlement Amount is equal to the Gross Settlement Amount less: (i) the General Release Award to Mr. Denham, as described herein; (ii) Plaintiff's Attorney's Fees and Litigation Expenses, as described herein; and (iii) the expenses of the Settlement Administrator.  Any portion of the Net Settlement Amount associated with potential Settlement Payments to Putative Collective Action Members who do not timely submit a Claim Form shall remain the sole and exclusive property of EEG.

13.    **"Notice of Settlement"** refers to the official notice of settlement of collective action, agreed to by the Parties and which shall be submitted to the Court for approval in conjunction with Plaintiff's Unopposed Motion for Approval, as is attached to this Agreement as Exhibit 2.

14.    **"Order Granting Approval"** refers to the order or statement of decision in the Action, if any, granting approval to the settlement set forth in this Agreement.

15.    **"Parties"** means Plaintiff and Defendant, as defined herein, collectively.

16.    **"Participating Collective Action Members"** means any Putative Collective Action Member who timely submits a valid Claim Form during the Settlement Notice Period, and their past, present, or future agents, heirs, assigns, representatives, and their respective successors and predecessors in interests.

17.    **"Plaintiff's Attorney's Fees and Litigation Expenses"** refers to the amounts to be paid to Plaintiff's Attorneys as (1) an award of attorneys' fees, and (2) for reasonable out-of-pocket costs and expenses incurred by Plaintiff in connection with the Action. These amounts shall be paid to Plaintiff's Attorneys under the terms of this Agreement, as authorized by the Court.  Any award attributable to attorneys' fees shall not exceed thirty-five percent (35%) (*i.e.*, $111,300.00) of the Gross Settlement Amount.  Any additional amount

requested by Plaintiff's Attorneys for out-of-pocket costs and expenses actually incurred in the Action will be disclosed by Plaintiff to the Court in a request for an award of litigation costs and expenses. Such amounts shall be paid completely from the Gross Settlement Amount and shall represent the total Defendant might be obligated to pay any Plaintiff or Plaintiff's Attorneys in connection with the Action as attorneys' fees and or litigation costs and expenses.

18.    **"Plaintiff's Attorneys"** means the attorneys representing Plaintiff in the Action, Butler Curwood, PLC, 140 Virginia Street, Suite 302, Richmond, VA 23219.

19.    **"Putative Collective Action Members"** means the individuals listed on Exhibit 1, who were presented to Plaintiff's Attorneys in anonymized form in data produced by Defendant's counsel on November, 1, 2022, and who worked for Defendant as hourly exempt computer technicians or as hourly non-exempt employees between October 11, 2019, and October 23, 2022, and who were paid a *per diem* and worked over 40 hours in a workweek, as well as any of their past, present, or future agents, heirs, assigns, representatives, and their respective successors and predecessors in interests.

20.    **"Qualified Settlement Fund"** shall be the qualified settlement fund established by the Settlement Administrator pursuant to 26 C.F.R. § 1.468B-1 and any other applicable regulations under the Internal Revenue Code.

21.    **"Settlement Administrator"** means American Legal Claim Services LLC ("ALCS"), or any other neutral third-party entity selected by the Parties and approved by the Court, that shall be responsible for: (i) calculating the amounts available to be paid to Plaintiff and any Participating Collective Action Members as individual Settlement Payments, based on the apportionment methodology proposed by Plaintiff and approved by Defendant; (ii) issuing the Notice of Settlement to Putative Collective Action Members, (iii) collecting Claim Forms

and required tax forms submitted by Participating Collective Action Members; (iv) establishing the Qualified Settlement Fund and calculating the amounts to be deposited by Defendant into the Qualified Settlement Fund; (v) distributing Settlement Payments to Participating Collective Action Members; (vi) remitting any required taxes and making any required tax reporting in connection with the settlement; (vii) preparing and distributing I.R.S. Form W-2s and I.R.S. Form 1099s to Participating Collective Action Members; and (viii) any other tasks specified in this Agreement, agreed to in writing by the Parties, or ordered by the Court.

22.    **"Settlement Payments"** means the amounts to be paid to Plaintiff and each Participating Collective Action Member from the Net Settlement Amount, as consideration for settling this Action and for releasing their claims against Defendant as set for in Release of Claims, Section II.H, *infra*.

23.    **"Unopposed Motion for Approval"** refers to the unopposed motion for approval of this settlement and its supporting papers to be filed by Plaintiff, after Defendant has reviewed and approved the same.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Plaintiff (for himself and the Participating Collective Action Members defined above) and Defendant, by and through their respective attorneys, HEREBY FURTHER STIPULATE AND AGREE as follows:

**B.    Scope of Settlement**

The settlement described herein will resolve fully and finally this Action against EEG and all of the released claims against Defendant.

**C.    Authority to Execute Settlement**

The signatories to this Agreement hereby represent that they are fully authorized to enter into this Agreement and bind the Parties to the terms and conditions hereof, as detailed below.

Plaintiff's Attorneys acknowledge that they have a retainer agreement with Mr. Denham. Pursuant to the retainer agreement, Plaintiff's Attorneys represent that they have authority to negotiate a settlement agreement on behalf of Mr. Denham.  Upon approval by the Court following full execution, such settlement agreement shall bind Mr. Denham to all terms set forth in this Agreement, regardless of whether Mr. Denham timely submits the required tax form or negotiates any General Release Award or Settlement Payment sent to him, as described herein.

The Notice of Settlement, which is attached to this Agreement as Exhibit 2, and which shall be submitted to the Court for approval, will advise all Putative Collective Action Members of the Settlement Payment they will receive in the event they consent to participate in this action by timely submit a valid claim form (consistent with Section F, *infra*), the binding nature of the release of claims described in this Agreement (*see* Section II.H, *infra*), and that the release will have the same force and effect upon Participating Collective Action Members as if the Agreement were executed by each Participating Collective Action Member.

### D.    Court Approval of Settlement

The Parties agree that Plaintiff will move the Court for approval of the settlement described herein.  Plaintiff will file an Unopposed Motion for Approval of the settlement, which shall request that the Court authorize that Notice of Settlement be issued to Putative Collective Action Members and move the Court to grant approval to the settlement.  Before filing the Unopposed Motion for Approval, or any other motion, petition, or application described in this Agreement, Plaintiff will provide the motion, petition, or application, and any supporting materials to be submitted, to counsel for Defendant for their review and approval.  Defendant will not unreasonably withhold its approval of the Unopposed Motion for Approval and will not oppose it consistent with the provisions of this Agreement, provided that Plaintiff provides Defendant with this opportunity to review any such motion prior to its filing.

Further, Plaintiff's Unopposed Motion for Approval will include his request for an award of Plaintiff's Attorneys' Fees and Litigation Expenses, as set forth herein.  Defendant similarly agrees not to unreasonably withhold its approval of such a petition/request or oppose it, so long as Plaintiff provides counsel for Defendant with an opportunity to review and approve the same and all supporting materials before submitting such request, and provided the amount of Plaintiff's Attorneys' Fees and Litigation Expenses sought does not exceed thirty-five percent (35%) (*i.e.*, $111,300.00) of the Gross Settlement Amount, and the portion of the Plaintiff's Attorneys' Fees and Litigation Expenses that are allocated to litigation expenses will be for reasonable costs actually incurred by Plaintiff's Attorneys in this Action.

Any award of Plaintiff's Attorneys' Fees and Litigation Expenses approved by the Court will be paid solely from the Gross Settlement Amount.  In no event will Defendant be required to pay more than the Gross Settlement Amount.

The Parties' agreement to settle Plaintiff's claims in this Action, as set forth in this Agreement, is contingent upon the Court, entering an Approval Order and, in the event an appeal of the Approval Order is filed, contingent upon the Approval Order being affirmed on appeal in a form substantially identical to the form of the Approval Order entered by the Court with respect to all material terms. Should the Court decline to approve all material aspects of this Agreement, or make rulings substantially altering the material terms of this Agreement, the parties will have the option to terminate this agreement and resume litigation if they are unable to mutually agree to revise the Agreement. (*See* Section II.AA, *infra*.) Additionally, and specifically, under such circumstances, absent mutual revision to the Agreement, Defendant will have no obligation to make any payment pursuant to this Agreement, including payment of any portion of the Gross Settlement Amount and the parties will resume litigation at that time.

### E. Defendant's Payment of Maximum Gross Settlement Amount

In order to settle the claims against Defendant in the Litigation, and as consideration for Plaintiff's release of claims, dismissal of the Action, and the other good and valuable consideration described herein that Plaintiff and Participating Collection Action Members are providing to Defendant, Defendant agrees to pay up to the total Gross Settlement Amount, which shall be used to provide for: (i) cash Settlement Payments to Participating Collective Action Members, as described in this Agreement; (ii) Defendant's share of payroll taxes in connection with the same Settlement Payments; (iii) the General Release Award, as described herein; (iv) Plaintiff's Attorneys' Fees and Expenses, as described herein; and (v) the expenses of the Settlement Administrator.

Pursuant to this Agreement, Defendant will not be required to pay any amount over $318,000.00. This amount, which has been negotiated between the Parties and is mutually

agreeable, represents the maximum gross amount Defendant would pay pursuant to this Agreement.

F.    **Individual Settlement Payments**

All Settlement Payments shall be paid from the Net Settlement Amount.    Prior to Plaintiff's filing of the Unopposed Motion for Approval of this settlement, the Parties will agree on a methodology for calculating individual Settlement Payments.    Specifically, Plaintiff's Attorneys will develop a methodology for determining a *pro rata* share of the Net Settlement Amount for each Putative Collective Action Member if they choose to join the Action.    The methodology and its resulting allocations to particular putative Collective Action Members must be approved by Defendants.    Defendant shall not unreasonably withhold approval for such methodology.    Defendants' agreement to Plaintiff's Attorneys' methodology for apportioning the Net Settlement Amount between all Participating Collective Action Members shall not be construed as an admission or agreement by Defendant that such individuals have been harmed or that any damages assigned to individual Putative Collective Action Members under the approved methodology correctly reflect any alleged harm.    Moreover, such allocations shall not be construed as an acknowledgment that any Putative Collective Action Members are entitled to such Settlement Payments outside of participation in the settlement of this Action.    Rather, such allocations represent only what each individual Putative Collective Action Members shall be offered, and what they shall be paid, should they choose to join the Action by becoming Participating Collective Action Members by timely submitting a Claim Form.

Once the Parties have agreed on the allocation, and the Court has granted approval to the settlement, Plaintiff's Attorneys' will provide the allocation information to the Settlement Administrator, who shall calculate the final amount of each potential Settlement Award based on

the actual Net Settlement Amount, factoring in the portion of the Net Settlement Amount attributable to the employer's share of payroll taxes associated with such Settlement Awards. Such determinations of individual potential Settlement Awards shall be calculated before the issuance of Notice of Settlement to Putative Collective Action Members, as described in Section II.I, *infra*.

To the extent that any Putative Collective Action Members do not timely or properly submit the Claim Form during the applicable Claim Period or Extended Claim Period, they will not receive any payment from the Net Settlement Amount, nor will they release any claims. The amounts associated with potential Settlement Payments to Putative Collective Action Members who do not timely submit a Claim Form, which are to be determined prior to the issuance of Notice of Settlement, shall remain the sole and exclusive property of Defendant. In no event will such amounts be redistributed to Participating Collective Action Members.

To the extent that a Participating Collective Action Member does not negotiate their Settlement Payment within 120 days of issuance, such Settlement Payment shall be void, and the Settlement Administrator shall issue a check for any such unnegotiated checks payable to "Butler Curwood, PLC," to be held in trust for the Participating Collective Action Members who did not timely negotiate their settlement check for a period of five (5) years at which time. If the Participating Collective Action Member has not claimed the Settlement Payment within that time, the Settlement Payment will escheat to the Commonwealth of Virginia in accordance with the Virginia Rules of Professional Conduct and the Virginia Disposition of Unclaimed Property Act, Virginia Code Sections 55.1-2500 through 55.1-2545.

**G.    Tax Treatment**

The Parties agree that each Settlement Payment to be issued to each Participating

Collective Action Member pursuant to this Agreement shall be separated into two amounts: fifty percent (50%) shall be allocated to the claims asserted in this Action for unpaid wages and fifty percent (50%) shall be allocated to the claims asserted in this Action for liquidated damages, statutory penalties, and/or other relief. The employer's share of all required payroll taxes associated with the portion of each Settlement Payment allocated to claims of unpaid wages will be paid from the Net Settlement Amount in accordance with this Agreement. That portion of each Settlement Payment allocated to claims of unpaid wages also will be subject to authorized or required deductions, including employee-paid payroll tax withholdings required by law, garnishments, and tax liens. The portion of each Settlement Payment allocated to liquidated damages, statutory penalties, and/or other relief shall be characterized as non-wage income to each Participating Collective Action Member.

The Settlement Administrator will report the portion of the Settlement Payment made to each Participating Collective Action Member attributable to wages on an I.R.S. Form W-2, and the portion of the Settlement Payment attributable to non-wage income on an I.R.S. Form 1099. The Settlement Administrator shall be responsible for issuing the settlement checks, less required withholdings and deductions, to each Participating Collective Action Member and mailing the settlement checks, Form W-2s, and Form 1099s to each such individual.

In order to allow for the proper tax withholdings from the Settlement Payments, and to allow for the submission of informational returns associated with those payments to the appropriate tax authorities, each Participating Collective Action Member will be requested to provide an I.R.S. Form W-9, or equivalent. Participating Collective Action Members shall be provided with such I.R.S. Form W-9s (or equivalents) by the Settlement Administrator as part of the notice process, described herein in Section II.I, *infra*, and shall have sixty (60) days from the

14

texting, emailing, and/or mailing of the notice packet to timely return the I.R.S. Form W-9 to the Settlement Administrator via email or U.S. mail.  Any such forms (or equivalents) emailed or postmarked more than sixty (60) days after the mailing of the notice packet shall not be accepted by the Settlement Administrator unless the Extended Claim Period applies, except with the written consent of all Parties.  In the event that a Participating Collective Action Member does not timely return such an I.R.S. Form W-9 (or equivalent) his or her Settlement Payment shall be subject to backup tax withholding as required by applicable law.  The Settlement Administrator will keep counsel for the Parties apprised as to the I.R.S. Form W-9's received.

### H.    Release of Claims

In order to settle the claims against Defendant in this Action, and as consideration for EEG's payment the portions of the Gross Settlement Amount that shall provide for cash Settlement Payments to Participating Collective Action Members, Plaintiff's Attorneys' Fees and Litigation Expenses, Settlement Administration costs, and the other good and valuable consideration described herein, Mr. Denham and Participating Collective Action Members agree to release any and all claims they may have against Defendant as described herein.

### 1.    Description of released claims

Mr. Denham and Participating Collective Action Members agree to forever completely settle, compromise, release, and discharge Defendant Eight Eleven Group, LLC, including any of its predecessors, successors, parents, subsidiaries, and divisions, including their respective owners, officers, directors, employees, and agents, from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any of them

has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages, except to the extent that any such claim may not be waived as a matter of law.  The claims released by Mr. Denham and the Participating Collective Action Members specifically include, but are not limited to:  (i) any and all claims asserted in this Action; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, improper deductions, or any other wage-related claims, damages or relief of any kind, including recordkeeping related to wages, and including but not limited to those arising under the federal FLSA, 29 U.S.C. § 201, *et seq.*, the Virginia Overtime Wage Act, Va. Code §§ 40.1-29.1 (2021) & 40.1-29.2 (2022), the Virginia Wage Payment Act, Va. Code § 40.1-29, the Virginia Minimum Wage Act, Va. Code §§ 40.1-28.8, *et seq.*, and other equivalent state and local statutes or ordinances; (iii) any and all claims under state and federal law for earned wages, overtime, missed or interrupted meal breaks, and/or travel expenses, including such claims for breach of express contract or labor agreement, implied contract, money had and received *in assumpsit*, *quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and/or failure to keep accurate records; (iv) any and all wage-and-hour laws or wage-related claims of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations

This Release of Claims has no application to any claim by any Participating Collective Action Members of any type arising on or after the date the Court issues an order approving the settlement set forth in this Agreement.

## 2.    General release of clams by Mr. Denham

In addition to the wage-and-hour claims described above (*see* Release of Claims, Section

II.H.1, *supra*), and in exchange for the additional consideration he shall receive in the form of the General Release Award described herein, effective as of the Effective Date, Mr. Denham hereby forever completely settles, compromises, releases, and discharges Defendant from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which Mr. Denham has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon, relate to, or arise out of or reasonably could have arisen out of his employment with, application for employment with, or termination from employment with Defendant, including the facts, acts, transactions, occurrences, events or omissions alleged in this Action or by reason of the negotiations leading to this Agreement, except to the extent that any such claim may not be waived as a matter of law.

### 3.    Agreement not to seek or accept relief in any other action

Mr. Denham and Participating Collective Action Members further covenant and agree that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted, settled, or released in this Action, which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Defendant.  Mr. Denham and Participating Collective Action Members further acknowledge that they are enjoined from pursuing any claim settled, compromised, released, and/or discharged as part of this settlement.

### 4.    Recognition of binding nature of release

The Parties agree that as of the Effective Date Mr. Denham and all Participating Collective Action Members will be bound by the terms and conditions of this Agreement, the order by the Court granting approval to the Agreement and this settlement, the final judgment in this Action, and the releases set forth herein.

### I.    Settlement Administrator and Notice Process

The Parties agree that ALCS, a mutually acceptable neutral third party, shall serve as the Settlement Administrator for this settlement if approved by the Court with jurisdiction over this Action.  To that end, as part of his Unopposed Motion for Approval, Plaintiff shall request that the Court approve ALCS as the Settlement Administrator and order that such entity perform the specific tasks assigned to the Settlement Administrator in this Agreement or by order of the Court, and only those tasks, unless otherwise specifically agreed to by the Parties.  These tasks shall generally include, but are not limited to:  (i) determining the amount of the Net Settlement Amount; (ii) calculating the amount of individual Settlement Payments to be paid from the Net Settlement Amount based on the methodology prepared by Plaintiff's Attorneys and approved by Defendant and the Court; (iii) determining the portion of the Gross Settlement Amount (including the employer's share of payroll taxes) to be deposited in the Qualified Settlement Fund; (iv) issuing the agreed Notice of Settlement to all Putative Collective Action Members defined herein after entry of the Order Granting Approval of the settlement set forth in this Agreement; (v) accepting and processing Claim Forms and I.R.S. Form W-9s submitted by Putative Collective Action Members; (vi) issuing payment of any Court-approved Plaintiff's Attorney's Fees and Litigation Expenses; (vii) issuing payment of any Court-approved General Release Award to Mr. Denham; (viii) issuing Settlement Payments to Participating Collective

Action Members; (ix) determining the amount of any funds to be distributed to Butler Curwood, PLC to be held in trust; (x) making required tax reportings to the appropriate federal and state taxing authorities; and (xi) issuing I.R.S. Form W-2s and I.R.S. Form 1099s to Participating Collective Action Members. The Parties agree that the Settlement Administrator is specifically prohibited from performing activities in relation to this settlement except as specifically provided for in this Agreement, or as ordered by the Court, unless such activities are first communicated to, and approved in writing by, both Plaintiff and Defendant.

### 1.    Providing contact information for Plaintiffs

Within fourteen (14) days after the date the Court enters an Order Granting Approval of this Agreement, Defendant will provide the Settlement Administrator with the name, employee identification number, and work state(s) of each Putative Collective Action Member, as well as the last known email address, last known cell phone number, and last known home address for each such individual, to the extent available. This information will remain confidential and will not be disclosed to anyone other than applicable taxing authorities, or pursuant to express written authorization by the applicable Putative Collective Action Member or by court order. This specifically includes sharing such information with Plaintiff's Attorneys prior to the time that any particular Putative Collective Action Members submits a Claim Form indicating their consent to participate in this settlement and to be represented by Plaintiffs' Attorneys.

### 2.    Sending the Notice of Settlement and Related Materials

Following the Effective Date, within thirty (30) days the Settlement Administrator shall both email and text the Court-approved Notice of Settlement to the email address and cell phone number provided by Defendant for each Putative Collective Action Member. The Notice of Settlement shall be provided to all Putative Collective Action Members defined herein and shall

consist of (i) a single email containing substantially the same information, and with substantially similar formatting, as the proposed notice attached hereto as Exhibit 2; and (ii) a mobile phone text message containing substantially similar text to that presented in Exhibit 3 hereto, as well as a hyperlink providing access to a website or online document containing substantially the same information, and with substantially similar formatting, as the proposed notice attached hereto as Exhibit 2.. Along with the Court-approved Notice of Settlement, the Settlement Administrator shall email each Putative Collective Action Member a copy, and provide them access via texted hyperlink, to the Claim Form and I.R.S. Form W-9 that Participating Collective Action Members are requested to complete in order to receive the Settlement Payments, as discussed in greater detail in Sections II.I.3 and II.J, *infra*.

Should Defendant be missing both an email address and a cell phone number for any Putative Collective Action Member, the Court-approved Notice of Settlement, Claim Form, and I.R.S. Form W-9 shall be sent to such individual by First Class U.S. Mail in lieu of transmittal by text and/or email. Such mailed Notice of Settlement shall contain substantially the same information, and have substantially similar formatting, as the proposed notice attached hereto as Exhibit 2. Similarly, if Defendant provides an email address and cell phone number for a Putative Collective Action Member, but both the emailed and text-messaged Notice of Settlement sent to the Putative Collective Action Member be returned to the Settlement Administrator as "undeliverable," the Settlement Administrator shall advise counsel for the Parties, and within seven (7) days the Settlement Administrator shall re-send the Notice of Settlement by First Class U.S. Mail to the last known address Defendant has for the Putative Collective Action Member. In the event that the Settlement Administrator is required to re-issue the Notice of Settlement in this manner, the Putative Collective Action Members being re-issued

notice shall have an Extended Claim Period of forty-five (45) days following the reissuance of Notice of Settlement to postmark or email their Claim Form and I.R.S. Form W-9 to the Settlement Administrator.

The costs of copies of the Notice of Settlement, copies of required tax forms, envelopes, postage, text messaging fees, and hosting costs associated with any internet website used to store an online copy of the notice accessible via text, are to be paid from the Gross Settlement Amount.  Similarly, the fees charged by the Settlement Administrator for the work it performs to effectuate the notice process shall be paid from the Gross Settlement Amount.

**3.      Responses to the Notice of Settlement**

The Notice of Settlement will inform Putative Collective Action Members that they must return a Claim Form in order to become a Participating Collective Action Member and receive a Settlement Payment.  The Notice of Settlement also shall inform Putative Collective Action Members that they must submit an I.R.S. From W-9, or their Settlement Payment will be subject to backup tax withholdings as required by law.  Putative Collective Action Members shall have no more than sixty (60) days following the initial emailing and texting of notice to email or postmark the required Claim Form and any tax forms to the Settlement Administrator unless the Extended Claim Period applies.

Within fourteen (14) days following the close of the latter of the Claim Period or final Extended Claim Period, the Settlement Administrator shall provide counsel for Defendant with copies of the executed Claim Forms submitted by all Participating Claimants.

**J.      Timely Submission of Claim Forms Required to Receive Settlement Payment**

Putative Collective Action Members will be required to submit their Claim Form in order to participate in the settlement set forth in this Agreement and receive an individual Settlement

Payment.  By timely submitting a Claim Form and agreeing to accept a Settlement Payment based on a *pro rata* apportionment of the Net Settlement Amount, a Putative Collective Action Member becomes a Participating Collective Action Member and shall receive such a Settlement Payment, less applicable taxes, in exchange for agreeing to be bound by the terms and conditions of this Agreement, the order by the Court granting approval to the Agreement and this settlement, the final judgment in this Action, and the Releases of Claims set forth herein in Section II.H.1, *supra*.  To the extent that any Putative Collective Action Member does not timely submit the required Claim Form he or she will not become a Participating Collective Action Member and will not be entitled to a Settlement Payment, but also will not be bound by the settlement or any order of the Court in the Action, and will not release any claims he or she may have against Defendant.

### K.    Communications Regarding the Settlement and Solicitation of Claims Against Defendant

#### 1.    Public Comment and Non-disclosure

Mr. Denham, Defendant, and Plaintiffs' Attorneys agree that they will not announce, disclose, broadcast, or similarly publicize the existence or terms of the settlement of this Action, any details of that settlement or this Agreement, or any of the events and negotiations surrounding the Agreement or settlement to the press, on any website, on social media, or in any similar forum.  In no event will Mr. Denham or Plaintiff's Attorneys use the logos or trademarks of Defendant or any of their respective affiliates in any publication of any type.

If asked about the settlement or this Agreement by any third party, including the press, Mr. Denham, and Plaintiff's Attorneys, and Defendant, and Defendant's counsel, will acknowledge only that: "the action was resolved on a satisfactory basis," and/or that "Plaintiff/Defendant and their counsel believe they have reached a fair and reasonable settlement

of the disputed claims," or similar words of the same effect.

Additionally, as partial consideration for the General Release Award he is to receive pursuant to this Agreement following Court-approval (*see* Section II.N.3), Mr. Denham agrees to keep all non-public terms of this settlement confidential.

Nothing in this provision shall prevent the Parties from filing this Agreement or related pleadings seeking its approval with the Court, or in any other legal proceeding.  Nor shall anything in this provision limit Plaintiff's Attorneys' ability to communicate with Mr. Denham about the settlement.

### 2.      Non-Solicitation

During the Claim Period, Mr. Denham and Plaintiff's Attorneys agree not to affirmatively solicit or contact Putative Collective Action Members outside of the Court-approved Notice of Settlement issued by the Settlement Administrator, as set forth in Section II.I.2, *supra*.  However, this shall not preclude Plaintiff's Attorneys from answering questions regarding the settlement or otherwise assisting Putative Collective Action Members who contact Plaintiff's Attorneys regarding the settlement, nor shall it any way limit Plaintiff's Attorneys from advising or assisting individuals who have become Participating Collective Action Members, and clients of Plaintiff's Attorneys, by timely submitting a Claim Form.

Similarly, Mr. Denham shall not solicit, contact, or otherwise encourage any current or former employees of Defendant, or any governmental or administrative entity or agency, to assert claims against Defendant.  And subject to the Court's approval, Plaintiff's Attorneys also agree not to solicit any current or former employees of Defendant, or any governmental or administrative entity or agency, to assert claims against Defendant.  That being said, however, should one of Defendant's current or former employees contact or be referred to Plaintiff's

Attorneys about a potential claim against Defendant, Plaintiff's Attorneys shall remain completely free to follow their professional judgment in advising and/or representing such an individual about a potential claim against Defendant.

### L.   No Right to Rehire

In exchange for the General Release Award, in addition to the general release of claims set forth in Section II.H.2, *supra*, Mr. Denham further agrees that he shall not apply for employment with Defendant in the future, and has no right to rehire or reemployment with Defendant, provided, however, that nothing shall prohibit Mr. Denham from future employment with Defendant should Defendant merge with, acquire, or be acquired by an entity that employs Mr. Denham.

### M.   Plaintiff's Attorneys' Fees and Litigation Expenses

Plaintiff's Attorneys may make an application or applications to the Court, for an award of Plaintiff's Attorneys' Fees and Litigation Expenses.  The amount of the attorneys' fees sought will not exceed thirty-five percent (35%) (*i.e.*, $111,300.00) of the Gross Settlement Amount. Plaintiff's also may seek a separate award from the Gross Settlement Amount of the amount of reasonable costs and expenses actually incurred by Plaintiffs' Attorneys in connection with the Action.  Any application or applications requesting Plaintiff's Attorneys' Fees and Litigation Expenses shall be filed as part of or after the Unopposed Motion for Approval of the Agreement and this settlement.  Defendant will not oppose any such application for fees or costs, provided that Plaintiff provides counsel for Defendant with an opportunity to review and approve their application or applications and all supporting materials before submitting such application or applications, and provided Plaintiff's Attorneys do not seek to recover attorneys' fees in excess of thirty-five percent (35%) (*i.e.*, $111,300.00) of the Gross Settlement Amount and enumerate

all such costs and expenses actually and reasonably incurred by Plaintiff's Attorneys in this Action.

In the event that the Court awards Plaintiff's Attorneys less attorneys' fees and litigation expenses than requested, only the amounts actually awarded by the Court will be considered Plaintiff's Attorneys' Fees and Litigation Expenses for purposes of this Agreement. The Net Settlement Amount available for distribution to Participating Collective Action Members as set forth in this Agreement, shall be determined using the amounts requested by Plaintiff's Attorneys. Should the Court, as a precondition to approval, require Plaintiff's Attorneys to reduce Plaintiff's Attorney's Fees and Litigation Expenses, and Plaintiff's Attorneys agree to such request, any amount of reduction will be added to the Net Settlement Amount available to be distributed to Participating Collective Action Members on a *pro rata* basis as individual Settlement Payments, as set forth in Section II.F, *supra*.

Payment of such Plaintiff's Attorneys' Fees and Litigation Expenses to Plaintiff's Attorneys as set forth in this Agreement, shall constitute full satisfaction of any and all obligations by Defendant to pay any person, attorney, or law firm (including but not limited to Plaintiff's Attorneys) for attorneys' fees, expenses, or costs (including but not limited to any fees, costs, and expenses related to any experts and/or consultants and any fees, costs, and expenses associated with mediation) incurred on behalf any and all Participating Collective Action Members, and shall relieve Defendant of any other claims or liability to any person for any attorneys' fees, expenses, and costs to which any person may claim to be entitled on behalf of any Participating Collective Action Members for this Action. Upon payment of Plaintiff's Attorneys' Fees and Litigation Expenses hereunder, Defendant without further action shall be released from any and all claims for attorneys' fees, expenses, and costs relating to this Action.

Plaintiff's Attorneys' Fees and Litigation Expenses will be paid solely from the Gross Settlement Amount.  In no event shall any award of Plaintiff's Attorneys' Fees and Litigation Expenses to Plaintiff's Attorneys cause Defendant to pay more than the Gross Settlement Amount in full satisfaction of all its obligations under this Agreement.

**N.    Funding of Gross Settlement Amount and Payments from Gross Settlement Amount**

**1.    Defendant's initial funding of the Qualified Settlement Fund**

No later than seven (7) days following the Effective Date, the Settlement Administrator shall determine and communicate to Defendant the initial amount Defendant is obligated to pay into the Qualified Settlement Fund under the Agreement, by adding (i) the total Court-approved Plaintiff's Attorney's Fees and Litigation Expenses; (ii) the total Court-approved General Release Award; and (iii) the total fees, approved by the Parties, that the Settlement Administrator will receive for all of its services in administering the settlement set forth in this Agreement. Within fourteen (14) days of the Effective Date, Defendant shall deposit this amount into the Qualified Settlement Fund established by the Settlement Administrator.

**2.    Settlement Administrator's payment of Plaintiff's Attorneys' Fees and Litigation Expenses**

Plaintiff's Attorneys' Fees and Litigation Expenses, as authorized by the Court, will be paid by the Settlement Administrator from the Gross Settlement Amount within seven (7) days after the initial funding of the Qualified Settlement Fund (*see* Section II.N.1, *supra*).

Prior to the distribution of Plaintiff's Attorneys' Fees and Litigation Expenses to Plaintiff's Attorneys, Plaintiff's Attorneys' firm shall provide the Settlement Administrator with a completed I.R.S. Form W-9 and, at an appropriate time following distribution of Plaintiff's Attorneys' Fees and Litigation Expenses to Plaintiff's Attorneys, the Settlement Administrator

will issue an I.R.S. Form 1099 to Plaintiff's Attorneys' firm.

### 3.    Settlement Administrator's payment of the General Release Award

The General Release Award  will be paid by the Settlement Administrator from the Gross Settlement Amount within seven (7) days after the initial funding of the Qualified Settlement Fund (*see* Section II.N.1, *supra*).  The Settlement Administrator will pay the General Release Award in the amount approved by the Court, not to exceed $5,000.00, directly to Mr. Denham.

Prior to the distribution of the General Release Award, Mr. Denham will provide the Settlement Administrator with a completed I.R.S. Form W-9.  At an appropriate time following the payment of the General Release Award the Settlement Administrator will issue Mr. Denham an I.R.S. Form 1099 that accounts for the payment of the General Release Award.

### 4.    Payment of the Settlement Administrator's Expenses and Fees

The Settlement Administrator's expenses and fees in performing its duties under this Agreement will be paid solely from the Gross Settlement Amount.  The Settlement Administrator shall determine the total final amount of such charges and costs prior to the filing of Plaintiff's Unopposed Motion for Approval, and before mailing the Notice of Settlement, such that they may be included in the initial funding of the Qualified Settlement Amount as set forth in Section II.N.1, *supra*.  The Parties shall work with the Settlement Administrator to establish an appropriate timeline for distribution of the Settlement Administrator's expenses from the Qualified Settlement Fund, with the understanding that a reasonable portion of the Settlement Administrator's expenses shall be withheld until such time as the Settlement Administrator has completed all of its services in relation to this Agreement.  Disputes of any kind relating to the Settlement Administrator will be resolved pursuant to the dispute resolution procedures set forth in Section II.O, *infra*, if they cannot be resolved informally by the Parties.  The Settlement

Administrator will regularly report to the Parties, in written form, the substance of the work performed, including all amounts paid under this Agreement.

### 5.    Further funding of the Qualified Settlement Fund

No later than seven (7) days following the close of the latest Claim Period or Extended Claim Period associated with any Putative Collective Action Member, the Settlement Administrator shall determine and communicate to the Parties the total additional amount that Defendant is obligated to pay under the Agreement by (i) determining the amount of the individual pre-determined potential Settlement Payments accepted by, and to be paid to, Participating Collective Action Members; and (ii) adding the previously determined employer's share of payroll tax associated with all such individual Settlement Payments to Participating Collective Action Members.  The portions of the Gross Settlement Amount associated with potential Settlement Payments (including the employer's share of payroll taxes) to Putative Collective Action Members who do not accept the payments by timely and properly submit Claim Forms, and are not therefore Participating Collective Action Members, shall remain the sole and exclusive property of Defendant and will not be deposited in the Qualified Settlement Fund.

Within fourteen (14) days of the Settlement Administrator's communication to Defendant of the additional total amount that Defendant is obligated to pay under the Agreement, Defendant shall deposit that amount into the Qualified Settlement Fund established by the Settlement Administrator.  This amount, along with the initial amount to be deposited in the Qualified Settlement Account, as set forth in Section II.N.1, *supra*, shall be the total amount that Defendant is obligated to pay until this Agreement and in no event shall exceed the Gross Settlement Amount.

6.  **Settlement Administrator's issuance of Settlement Payments to Participating Collective Action Members**

Within fourteen (14) days of Defendant's funding of the final amount into the Qualified Settlement Fund, as set forth in Section II.N.5, *supra*, the Settlement Administrator will make Settlement Payments by First Class U.S. Mail to each Participating Collective Action Member who timely and properly returned a Claim Form.  The portion of each such Settlement Payment allocated to claims of unpaid wages will be subject to required or authorized deductions, including employee-paid payroll tax withholdings required by law, garnishments, and tax liens. For any Participating Collective Action Member who does not timely submit an I.R.S. Form W-9, the portion of their Settlement Payment allocated to non-wage income will be subject to required backup withholdings.

The checks making such Settlement Payments shall include language, to be agreed to by the Parties, indicating that by signing the check the Participating Collective Action Members acknowledge the release of claims set forth, *supra*, in Section II.H.  Copies of each negotiated check showing this acknowledgment and the Participating Collective Action Member's signature shall be provided to Defendant by the Settlement Administrator.

The Settlement Administrator's determination of whether a Putative Collective Action Member timely submitted the required Claim Form, and is therefore eligible to receive the Settlement Payments, will be conclusive and binding on all Participating Collective Action Members, subject to the dispute resolution provisions of this Agreement as set forth in Section II.O, *infra*.

Each Participating Collective Action Members will have 120 days from the date on which the Settlement Payment is mailed to negotiate his or her settlement check.  If any Settlement Payment check is not negotiated within that period of time, that check will be

voided, and a stop-payment will be placed on the check. In such event, the Settlement Administrator will issue a check payable to "Butler Curwood, PLC" to be held in trust for the Participating Collective Action Member who did not timely execute their check, so that Plaintiff's Attorneys, as the attorneys for such Participating Collective Action Members, can work to ensure they receive their Settlement Payments. Plaintiff's Attorneys, Butler Curwood, PLC, will hold such unnegotiated Settlement Payments in trust for a period of five (5) years at which time any undistributed Settlement Payments will escheat to the Commonwealth of Virginia, consistent with the Virginia Rules of Professional Conduct.

Neither Defendant, nor counsel for Defendant, nor Plaintiff's Attorneys, nor Plaintiff, nor the Settlement Administrator shall have any liability for lost or stolen settlement checks, for forged signature endorsements on settlement checks, or for unauthorized negotiation of settlement checks.

At an appropriate time following the issuance of Settlement Payments to Participating Collective Action Members, the Settlement Administrator will issue to each Participating Collective Action Members an I.R.S. Form W-2 for the portion of his or her Settlement Payments attributable to wages, an I.R.S. Form 1099 for the portion of his or her Settlement Payment attributable to non-wages.

**O.    Dispute Procedure**

Except as otherwise set forth herein (*see* Parts II.W & II.AA.1, *infra*), in the event of a dispute concerning the proper interpretation of the Agreement, the enforcement of this Agreement, the Parties' rights or obligations under the Agreement, or any alleged breach of the terms of the Agreement, notice must be mailed to counsel for the opposing party as provided in Section II.V, *infra*. After receipt of such notice, the Parties shall meet and confer in a good

faith attempt to resolve the matter for fourteen (14) days. In the event those efforts are unsuccessful, and one or more of the Parties attempts to institute any legal action or other proceeding against any other party or Parties to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful party or Parties shall be entitled to recover from the unsuccessful party or Parties reasonable attorneys' fees, expenses, and costs, including expert witness fees incurred in connection with any enforcement actions, and any damages incurred.

**P.    Assignment of Claims**

Defendant and its counsel, and Mr. Denham, for himself, and Plaintiff's Attorneys, for themselves, represent, covenant and warrant that they have not directly or indirectly, assigned or transferred to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

The Parties further agree that this Agreement will be binding upon, and inure to the benefit of, the Parties, and their respective heirs, trustees, executors, successors, legal administrators, and assigns.

**Q.    Denial of Liability**

Defendant denies that it has failed to comply with the law in any respect or has any liability under the claims asserted in this Action. The Parties acknowledge that this Agreement is entered into for the purpose of compromising disputed claims and that nothing herein is an admission of liability, wrongdoing, or the propriety of collective treatment by Defendant. Neither the Agreement nor any document prepared in connection with the settlement may be admitted in any proceeding as an admission by Defendant. Notwithstanding this paragraph, any and all provisions of this Agreement may be admitted in evidence and used in any proceeding to

enforce the terms of this Agreement or in defense of any claims released or barred by this Agreement.

Additionally, no party will be considered a prevailing party in this Action for any purpose as a result of this Agreement, except with respect to the evaluation of Plaintiff's Attorneys' application for an award of attorneys' fees and costs in connection with this settlement, the limited purposes for which Plaintiff shall be treated as a prevailing party.

### R.    Construction and Interpretation

The Parties hereto agree that the terms and conditions of the Agreement are the result of lengthy, intensive, arm's-length negotiations among the Parties, through counsel, and the Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of the Agreement.

Paragraph and section titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this Agreement or an of its provisions.  With the exception of Part I, *supra*, each term of this Agreement is contractual and not merely a recital.

All exhibits attached to the Agreement, and referenced herein, are incorporated into the Agreement by such references and are a material part of this Agreement.  Any notice or other exhibit that requires approval of the Court must be approved without material alteration from its current form in order for this Agreement to become effective.

This Agreement shall be governed by and enforced in accordance with the laws of the Commonwealth of Virginia.

### S.    Modification

This Agreement, and any of its parts, may be amended, modified, or waived only by an

express written instrument signed by all signatories below or their successors-in-interest.

**T.    Counterparts; Electronically Transmitted Signature**

This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument.  Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.  A signature made or delivered electronically by facsimile, email, PDF, or otherwise shall be treated and given the same legal effect as an original signature.

**U.    Waiver of Right to Object**

By signing this Agreement, Mr. Denham agrees to be bound by its terms.  Accordingly, Mr. Denham agrees not to request dismissal from the Action, or otherwise seek to be excluded from the settlement, and agrees not to object to any of the terms of the settlement.  Mr. Denham agrees that any motion to withdraw his consent to participate in the Action, or any objection to the settlement by him, will be void and have no force or effect.  Likewise, Defendant agrees to be bound by the terms of this settlement and agree not to object to any of the terms of the settlement.  Non-compliance by Defendant with this paragraph will be void and have no force or effect.

**V.    Notices, Demands, and Communications Concerning the Settlement**

Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by First Class U.S. Mail, addressed as follows:

To Plaintiff, Participating Collective Action Members,
and/or Plaintiff's Attorneys: _____

Craig Curwood, Esq.
Zev Antell, Esq.
BUTLER CURWOOD, PLC
140 Virginia Street, Suite 302

Richmond, VA 23219

<u>To Defendant and/or counsel for Defendant:</u>

Michael S. McIntosh, Esq.
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102

## W.    Form and Content Resolution

The Parties agree they must reach agreement on the final form and content of the following materials related to this Agreement:  Plaintiff's Unopposed Motion for Approval and any supporting materials or proposed orders concerning the same; the Notice of Settlement to be sent to Putative Collective Action Members concerning the settlement; and Plaintiff's planned motion/application for Plaintiff's Attorneys' Fees and Litigation Expenses, and any supporting materials or proposed orders.

The Parties agree that in the event they dispute and reach impasse as to any of the settlement terms, or the form and content of any documents listed in the preceding paragraph, or any other document necessary to effectuate the Agreement, that cannot be resolved among the Parties themselves, or, where appropriate, with the assistance of the Settlement Administrator, any and all such disputes may be submitted to mediator Eric Paltell for final and binding resolution.  The cost incurred for the services of Mr. Paltell shall be paid jointly by the Parties with Mr. Paltell having the authority to order reimbursement for mediator fees by one party to the other in the event he determines the position(s) taken by the reimbursing party to have been unsupported or unreasonable or dilatory.  The Parties shall bear their own respective expenses for attorneys' fees, expenses, and costs for such proceeding.

## X.    Authorization

Plaintiff's Attorneys warrant and represent that they are fully authorized by Plaintiff, and

34

the attorneys for Defendant warrant and represent that they are fully authorized by Defendant, to take all appropriate action required or permitted by this Agreement. The Parties agree to fully cooperate with each other to accomplish the terms of the settlement and this Agreement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of the Agreement. The Parties to the Agreement shall use their best efforts, including all efforts contemplated by the Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the Agreement and the terms set forth herein. If the Parties are unable to reach agreement on the form or content of any document needed to implement this Agreement, the Parties agree, in accordance with Part II.W, *supra*, to seek the assistance of mediator Eric Paltell.

      **Y.**     **Dismissal**

      Upon entry of a final order approving this Agreement, Plaintiff agrees to execute all documents necessary to dismiss with prejudice any and all claims raised against Defendant in the Action. Both Plaintiff and Defendant shall stipulate to the entry of final judgment with no appeal.

      **Z.**     **Reasonableness Of Settlement**

      The Parties believe that this is a fair, reasonable, and adequate settlement and have arrived at this settlement through arms-length negotiations, taking into account all relevant factors, present and potential.

      **AA.**    **Termination of the Settlement Agreement**

      **1.**     **Grounds for Settlement Termination:**

      Plaintiff or Defendant may terminate the Agreement if the Court declines to enter an Order Granting Approval of a settlement in substantially the same form as that submitted by the Parties, or the Agreement does not become final for any other reason, or a Court of Appeals

reverses the entry of an order granting final approval to this settlement or a final judgment in this Action following such an order, provided that the Parties agree to work cooperatively and in good faith, including mediating unresolved differences with mediator Eric Paltell for a period of thirty (30) days, to address and resolve any concerns identified by the Court in declining to enter an Order Granting Approval, or a settlement in the form submitted by the Parties, or by any Court of Appeals reversing the entry of an order granting final approval to this settlement or a final judgment in this Action following such an order.

## 2.    Procedures for Termination:

To terminate this Agreement on one of the grounds specified above, the terminating Counsel (*i.e.*, Plaintiff's Attorneys or counsel for Defendant) shall give written notice to the opposing counsel no later than sixty (60) days after the Court acts.

## 3.    Effect of Termination:

In the event that this Agreement is terminated, or the settlement of the Action is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court:

(a.)    The Agreement, and any releases contained therein, shall be terminated and shall have no force or effect, and no party shall be bound by any of its terms;

(b.)    In the event the Agreement is terminated, Defendant shall have no obligation to make any payments to any Plaintiff, any Participating Collective Action Member, or Plaintiff's Attorneys;

(c.)    Any Order Granting Approval to this settlement, and/or judgment, including any order of collective certification, shall be vacated;

(d.)    The Agreement and all negotiations, statements, and proceedings relating thereto, shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the action prior to the settlement;

(e.)    Neither this Agreement, nor any ancillary documents, data, actions, statements, or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the Action or any other action for any purpose whatsoever;

(f.)    For any Putative Collective Action Member who may, consistent with 29 U.S.C. § 216(b), eventually file a timely written consent to participate in the Action as a party plaintiff, the running of the statute of limitations otherwise applicable to the causes of actions set forth in the First Amended Complaint in the Action shall be tolled from January 11, 2022, until counsel for one of the Parties informs their counterpart, in writing, that the settlement is terminated and litigation is to resume.

(g)    Defendant shall reserve the right to oppose collective-action certification pursuant to 29 U.S.C. § 216(b) should the Agreement not become final.

## BB.    Integration Clause

After this Agreement is fully executed by all Parties, it will constitute the entire Agreement of the Parties and fully supersedes any and all prior agreements or understandings, written or oral, between the Parties pertaining to the subject matter hereof, including, but not limited to, any and all written and oral agreements reached between the Parties during the mediation that resulted in this Agreement.  The Parties affirm that they are relying solely on their own judgment and the advice of their own counsel in deciding to enter into this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement:

Dated: 01/31/23

By _____
Evan Denham
Plaintiff


Dated: _____

By _____
Jeff Weiser
EIGHT ELEVEN GROUP, LLC
Defendant


Approved as to form:

Dated: 2/8/23

By _____
Craig Curwood, Esq.
BUTLER CURWOOD, PLC
Attorneys for Plaintiff


Dated: 2/8/23

By _____
Zev Antell, Esq.
BUTLER CURWOOD, PLC
Attorneys for Plaintiff


Dated: _____

By _____
Michael S. McIntosh, Esq.
LITTLER MENDELSON, P.C.
Attorneys for Defendant


38

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement:

Dated: _____          By _____
                                Evan Denham
                                Plaintiff


Dated: 1/31/2023               By _____
                                Jeff Weiser
                                EIGHT ELEVEN GROUP, LLC
                                Defendant


Approved as to form:

Dated: _____          By _____
                                Craig Curwood, Esq.
                                BUTLER CURWOOD, PLC
                                Attorneys for Plaintiff

Dated: _____          By _____
                                Zev Antell, Esq.
                                BUTLER CURWOOD, PLC
                                Attorneys for Plaintiff

Dated: 2/3/2023                By _____
                                Michael S. McIntosh, Esq.
                                LITTLER MENDELSON, P.C.
                                Attorneys for Defendant

38

*Denham v. Eight Eleven Group*

**Joint Stipulation & Settlement Agreement**

# Exhibit 1

**List of Putative Collective Action Members**

| # | LAST | FIRST (MIDDLE) |
|---|------|----------------|
| 1 | Adegbola | Funmi |
| 2 | Adekunle | Dupe |
| 3 | Adeniseun | Laura A |
| 4 | Adesakin | Joshua O |
| 5 | Adesina | John O |
| 6 | Adkins | Iyana |
| 7 | Agbelusi | Patrick Ayodeji |
| 8 | Ajayi | Kehinde O |
| 9 | Ajisafe (Adeniseun) | Paula T |
| 10 | Akintoke | Ade |
| 11 | Allen | Brittany |
| 12 | Anuolam | Vivian Tochi |
| 13 | Avery-Dodd | Denise |
| 14 | Azeez | Latoya |
| 15 | Azeez | Sherif |
| 16 | Babatunde | Kudrat M |
| 17 | Banks | Lateef |
| 18 | Barksdale | Florence |
| 19 | Bell Wallace | Glenda C |
| 20 | Bernard | Lawrence |
| 21 | Bester | Lillian |
| 22 | Bolton | RaSheia |
| 23 | Bozeman | Roshada Michele |
| 24 | Branca | Trent |
| 25 | Brown | Abraham J |
| 26 | Bush | Brandon D |
| 27 | Callis | Deja |
| 28 | Callis | Raven Janine |
| 29 | Campbell | Annette A |
| 30 | Canady | Kea'Undra |
| 31 | Carter | Jami Dione |
| 32 | Chapman | Deborah Melia |
| 33 | Clarke | Yvette Jacqueline |
| 34 | Cook | Anna Nicole |
| 35 | Craig | Lisa |
| 36 | Crawford | Alicia |
| 37 | Dae | Myka |
| 38 | Dailey | Felicia R |
| 39 | Dangelle Moody | Jelesia |
| 40 | David | Natasha L |

| 41 | Dawkins | Twineisha A |
| 42 | Drake | Darius |
| 43 | Ebie | Jason Chiagoziem |
| 44 | Ellison | Mashanda Dene |
| 45 | Erwin | Mark Edward |
| 46 | Ezenwa | Virginia |
| 47 | Fakeye | Olaniyi |
| 48 | Ferrill | Amber Alice Cherie |
| 49 | Flaggs | Kamisha |
| 50 | Flowers | Michael |
| 51 | Foxworth | Elgin |
| 52 | Fugate | Mandy Lyn |
| 53 | Fuller | George E |
| 54 | Gandhi | Rishabh |
| 55 | Glover | Edem Gameli Kwame |
| 56 | Gordon | Doral |
| 57 | Gouthro | Brian |
| 58 | Gray | Kelly Lanette |
| 59 | Gray | Tyrique N |
| 60 | Green | MauRece Zandell, Jr. |
| 61 | Green | Yolanda W |
| 62 | Griffin | Marcelle |
| 63 | Griffin | Shameka Shawntel |
| 64 | Hagan | John |
| 65 | Hailey | Monique M |
| 66 | Halbert | Terence |
| 67 | Hall | Chloe Clarice |
| 68 | Hallmark | Sherry D |
| 69 | Hansford | Joseph Charles |
| 70 | Henley | Crystal |
| 71 | Herron | Beverly O |
| 72 | Hill | Sharita |
| 73 | Hunter | Marc |
| 74 | Ilaboya | Evelyn |
| 75 | Ingels | Dylan Michael |
| 76 | Ingels | Jessica Ann |
| 77 | Ingels | Ryan Conrad |
| 78 | Jackson | Ron Christopher |
| 79 | Jackson | Shantell |
| 80 | Jimoh | Bukola Monsurat |
| 81 | Johnson | Jasmine |
| 82 | Johnson | Jordan LaRon |
| 83 | Johnston | Sarah Lewis |
| 84 | Jones | David |
| 85 | Jones | Laurence O |
| 86 | Jordan | Barbara Diana |
| 87 | King | Barry |

| 88 | King | Brittany Danielle |
|---|---|---|
| 89 | King | Cornelius J |
| 90 | Koyenhan | Victor |
| 91 | Krider | Andrew |
| 92 | Lewis | Tracey |
| 93 | Lewis | Victoria |
| 94 | Lockhart | Matthew |
| 95 | Lupo | Grady |
| 96 | Luu | Shelly |
| 97 | Lyons | Theodore |
| 98 | Mbacke | Summer |
| 99 | McGown | Mya D |
| 100 | McSwain | Lorraine B |
| 101 | Minor | Nathalie |
| 102 | Moody | Grady A |
| 103 | Moody | Travis |
| 104 | Moreton | Pamela Gail |
| 105 | Morris | Jacqueline C |
| 106 | Moses | Shaughnessy D |
| 107 | Neal | Jataya |
| 108 | Neely | Trevor Ja'Mal |
| 109 | Niles | Alexander |
| 110 | Nwanonyiri | Desiree O |
| 111 | Nwigwe | Casmir |
| 112 | Nzewi | Eberechukwu |
| 113 | Odubanjo | Yetunde D |
| 114 | Odufuwa | Eniola |
| 115 | Ogedengbe | Babajide |
| 116 | Ogunmefun | Funmilayo |
| 117 | Ogwun | Valentine |
| 118 | Omisore | Taiwo |
| 119 | Onuoha | Elizabeth Ugo |
| 120 | Onyewu | Amara |
| 121 | Orhewere | Betty |
| 122 | Orogbangba | Taiwo |
| 123 | Ortiz | Jeremy |
| 124 | Osula-Hill | Felicity |
| 125 | Oyeniran | Idowu |
| 126 | Patterson | Ashley Renee |
| 127 | Pearce | Roxanne |
| 128 | Perkins-Fricks | Peggy |
| 129 | Pessink | Garrett |
| 130 | Phillips | Sidney |
| 131 | Phung | Huu Q |
| 132 | Phung | Kevin |
| 133 | Poquee | Jason |
| 134 | Quezada | Martin |

| 135 | Ramsey Bolton | Angela |
| 136 | Reed | Helena P |
| 137 | Reynolds | Daphne Deshawn |
| 138 | Riley | Shane Zachary |
| 139 | Roberts | Andy |
| 140 | Robinson | Monyea |
| 141 | Rodgers | Nicole |
| 142 | Rodriguez | Yasmari Teres |
| 143 | Rojas (Bunch) | Jacquelyn K |
| 144 | Salami | LaTasha R |
| 145 | Salami | Olawale |
| 146 | Sanni | Joseph |
| 147 | Scheer | Melissa Ann |
| 148 | Selleck | Jill L |
| 149 | Sewell | Curtis Anthony |
| 150 | Simpson | Doyle D |
| 151 | Skipwith | David |
| 152 | Smalls | Everett R |
| 153 | Smith | Anthony M |
| 154 | Smith | Donald |
| 155 | Smith | Jonathan |
| 156 | Smith | Sonya Devonne |
| 157 | Solarin | Ibilola |
| 158 | Solomon | Emmanuel |
| 159 | Spruill | Kenneth |
| 160 | Suleonibo | Abubakar |
| 161 | Super-Jimoh | Lauren A |
| 162 | Taylor | Lakina Rashawn Renee |
| 163 | Thomas | Christopher M |
| 164 | Traore | Brahima |
| 165 | Tuffo | Sharon D |
| 166 | Udeagha | Egu |
| 167 | Udoh | James |
| 168 | Ugo | Richard |
| 169 | Umoette | Iddy |
| 170 | Van Morgan | Danielle |
| 171 | Vann | Lesleigh Brooke |
| 172 | Void | Andre S |
| 173 | Washington | Latatia Sheree |
| 174 | Watkins | Damon |
| 175 | West | Wayne |
| 176 | White | Dorlene Yvette |
| 177 | White | Michael Allen |
| 178 | Williams | Ameenah |
| 179 | Williams | Robin Lynn |
| 180 | Williams | Steven R |
| 181 | Williams | Tamara T |

Joint Stipulation and Settlement Agreement - Exhibit 1

| 182 | Wilson | Rodrecus |
| 183 | Winning | Debra Lynn |
| 184 | Wolagiewicz | Deborah C |
| 185 | Wood | Adenike |
| 186 | Wooden | Tedya N |
| 187 | Wynn | Kelsey Holden |
| 188 | Yawson | JoJo |

*Denham v. Eight Eleven Group*
**Joint Stipulation & Settlement Agreement**
# Exhibit 2
**<u>Notice of Settlement</u>**

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

## *DENHAM, et al. v. EIGHT ELEVEN GROUP, LLC*
### (Civil Action No. 3:22-cv-00531-JAG)

**NOTICE OF SETTLEMENT OF UNPAID WAGE LAWSUIT INVOLVING HOURLY EXEMPT COMPUTER TECHNICIANS AND HOURLY NON-EXEMPT EMPLOYES OF EIGHT ELEVEN GROUP, LLC WHO RECEIVED *PER DIEM* PAYMENTS AND WORKED OVER 40 HOURS IN A WORKWEEK BETWEEN OCTOBER 11, 2019, AND OCTOBER 23, 2022.**

*A court authorized this Notice.  This is not a solicitation from a lawyer.*

- Evan Denham, a former employee of Eight Eleven Group, LLC ("EEG") who worked as an Epic TDR Lead, filed a lawsuit in the U.S. District Court for the Eastern District of Virginia claiming that he and other similarly situated employees were not properly paid for all hours worked.  EEG denies the allegations in the lawsuit and maintains that it properly compensated all individuals in its employ under the federal and applicable state and laws.

- The Court has not decided whether EEG did anything wrong.  However, the parties have agreed to a settlement of this case, which the Court approved.  The Court also authorized notice to individuals who are eligible to participate in the settlement.  EEG's records indicate you are eligible to participate in the settlement based on your job position, dates of employment, hours of work, and receipt of *per diem* payments.

- ***Your legal rights are affected whether you act or not.  Your options are explained in this notice.  Please read it carefully.***

## <u>SUMMARY</u>

The settlement provides a cash payment to current and former employees of EEG who worked as hourly exempt computer technicians or non-exempt employees, and who received *per diem* payments and worked over 40 hours in a workweek between October 11, 2019, and October 23, 2022.  The amount of the payments available to each settlement participant will vary based on their pay/*per diems* and the number of weeks they worked.  In exchange for accepting a settlement payment, participants will release certain legal claims they may have against EEG.  Your estimated settlement award is: $[SETTLEMENT PAYMENT].  To join this settlement and receive a settlement payment, you must submit the enclosed Claim Form and Release by no later than [60/45 DAYS AFTER SENT].  You also must return the attached I.R.S. Form W-9 to avoid having supplemental tax withholding deducted from your settlement payment.

| HERE ARE YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **JOIN THE SETTLEMENT BY SENDING IN A CLAIM FORM** | **Join the settlement.  Receive a settlement payment.  And give up or "release" certain claims you may have against EEG.**<br><br>If you would like to receive the settlement payment allocated to you, you must complete the Claim Form and Release provided along with this notice and return it to the Settlement Administrator by no later than [60/45 DAYS AFTER SENT], as explained below in Section 11.  If you do not wish for additional supplemental tax withholdings to be taken from your payment you also must complete the I.R.S. Form W-9 provided.  Anyone who receives a settlement payment also will be bound by the release of claims, as explained below in Section 8. |
| **DO NOTHING AND DO NOT JOIN THE SETTLMENT** | **Do nothing.  Do not receive a settlement payment.  But retain all claims you may have against EEG.**<br><br>If you do not complete the Claim Form and Release provided with this notice and return it to the Settlement Administrator by no later than [60/45 DAYS AFTER SENT], as explained below in Section 12, you will not be part of the settlement and will not receive any settlement payment.  You also will, however, retain, and will not release, any claims you may have against EEG, as explained below in Section 12. |

These rights and options — and the deadlines to exercise them — are explained further in this notice.

# BASIC INFORMATION

| 1. | Why did I get this notice? |
|---|---|

You have received this notice because EEG's records show that you worked for EEG as either an hourly exempt computer technician or as an hourly non-exempt employee, and that you received *per diem* payments and worked over 40 hours in a workweek sometime between October 11, 2019, and October 23, 2022, while working in those positions. All individuals who meet these conditions are eligible to participate in this settlement.

The Court authorized this notice because you have a right to know about the settlement and about all of your options in connection with it. This notice explains the lawsuit and settlement, your legal rights, what benefits are available in the settlement, what you give up by participating in the settlement, and how you can join the settlement if you would like to do so.

| 2. | What is this lawsuit about? |
|---|---|

The title of the case is *Denham, et al. v. Eight Eleven Group, LLC*, No. 3:22-cv-00531-JAG. The person who filed the lawsuit is the "plaintiff" and the company he sued is the "defendant."

Plaintiff previously worked for defendant as an exempt-classified Epic TDR Lead. In this position, plaintiff traveled away from his home state to work on a project in Virginia for one of defendant's clients. During the time plaintiff worked in Virginia he received *per diem* payments. Plaintiff alleges that defendant violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and Virginia Overtime Wage Act ("VOWA"), Va. Code § 40.1-29.2 (2021). Because he was classified as exempt from overtime, Plaintiff did not receive additional overtime pay when he worked over 40 hours in a workweek. He claims, however, that he did not meet the requirements for exempt treatment under the FLSA and the VOWA and should have received one-and-a-half time his regular rate for all hours worked over 40 in a workweek. Additionally, plaintiff contends that his *per diem* payments should have been treated as wages when computing his regular rate and overtime pay. Based on these allegations, plaintiff seeks to recover overtime wages, liquidated damages, pre-judgment interest, and attorneys' fees and costs under the FLSA and the VOWA. He also seeks to bring these claims on a collective basis on behalf of other hourly employees of defendant who he alleges were similarly situated to him.

Defendant denies that their compensation practices violated the FLSA or the VOWA. To the contrary, defendant contends it properly classified plaintiff and other individuals as exempt from overtime under the computer employee exemption. Additionally, defendant asserts that it properly excluded *per diem* payments from the regular rate and overtime wage calculation for non-exempt employees, since these payments reimbursed business expenses and were not wages. Accordingly, defendant believes plaintiff's claims are without merit. Defendant further denies that collective treatment is appropriate in this case.

The Court in charge of the lawsuit is the United States District Court for the Eastern District of Virginia. The judge presiding over the case is Senior United States District Court Judge John A Gibney, Jr.

| 3. | What is a "collective action" and who is involved? |
|---|---|

Under the FLSA and the VOWA, a group of similarly situated individuals may seek to recover unpaid overtime wages and related damages in a single lawsuit, rather than in many separate cases. This is known as a "collective action." In a collective action, individuals who file consents, or "opt in" to the lawsuit, become plaintiffs. The individual who initiates the lawsuit, bring the action on behalf of themselves and other people they believe have similar claims who may later choose to join the action. This case was brought as a collective action.

This type of "opt-in" collective action is different from the better-known "class action," in which no consent is needed to join. In a traditional class action, the "named plaintiffs" sue on behalf of all individuals within a defined class. Individuals who meet the class definition, the "class members," are automatically members of that class unless they file a written request with the Court specifically asking to be excluded. This case is not a class action.

The plaintiff here, Evan Denham, filed this case as a collective action. The putative collective action includes those who worked for EEG as either an hourly exempt computer technician or as an hourly non-exempt employee, and who also received *per diem* payments and worked over 40 hours in a workweek sometime between October 11, 2019, and October 23, 2022, while working in those positions. While the Court had not decided whether plaintiff and such other employees are sufficiently similar that they may proceed collectively, the parties agreed to settle this matter on a collective basis and the Court authorized that notice be sent to inform individuals regarding the settlement and their rights concerning it.

| 4. | Why is there a settlement? |
|---|---|

Litigation is risky, and neither side can predict the outcome with certainty. It also would likely be some time before any final resolution could be reached through litigation.

Given these factors, the plaintiff and their attorneys concluded, after careful consideration of all of the facts and circumstances, that the proposed settlement agreed to by the parties, is fair, reasonable, and adequate, and is in the best interests of plaintiff and the putative collective action members. This settlement avoids the costs and inconvenience associated with the discovery process, as well as the costs and risks associated with litigation — including disputes about the propriety of collective treatment, dispositive motions, trial, and potential appeals — while providing, what plaintiff believes are, substantial cash benefits to plaintiff and those other employees who choose to join the settlement.

Defendant EEG expressly denies any liability or wrongdoing and contends that it has complied with the FLSA and the VOWA at all times. By entering into the settlement agreement, defendant has not admitted—and expressly denies— any liability or wrongdoing. However, like the plaintiff and his attorneys, defendant recognizes the cost and delay associated with further litigation, and the risk inherent in all lawsuits. As such, defendant agreed to enter into a settlement to avoid the risk, costs and disruption of ongoing litigation and to settle the outstanding claims against them.

The Court has not decided in favor of plaintiffs or the defendant. Instead, at a mediation, the parties agreed to settle the case instead of proceeding further in litigation.

## WHO IS IN THE SETTLEMENT

| 5. | How do I know if I am part of the settlement? |
|---|---|

Individuals are eligible to participate in the settlement if EEG's records show they:

1. Worked for EEG as either (i) an hourly exempt computer technician, *or* (ii) an hourly non-exempt employee; *and*

2. Also received *per diem* payments and worked over 40 hours in one or more workweeks between October 11, 2019, and October 23, 2022, while working in those positions.

You are eligible to participate in the settlement if you are receiving this notice.

## THE SETTLEMENT BENEFITS – WHAT YOU GET & WHAT YOU GIVE UP

| 6. | What does the proposed settlement provide? |
|---|---|

Defendant has agreed to pay a total settlement amount of up to $318,000.00 (the "Gross Settlement Amount"). The Gross Settlement Amount provides payments to any eligible individuals who choose to join the settlement, the

employer's share of payroll taxes associated with those payments, plaintiffs' attorneys' fees and litigation expenses, a general release award to plaintiff Evan Denham, and certain costs associated with the administration of the settlement. The amount remaining after the payment of plaintiffs' attorney's fees and expenses, the general release award, and the costs of administering the settlement is referred to as the "Net Settlement Amount." The Net Settlement Amount, less required tax withholdings, will be available for distribution to individuals who join the settlement as settlement payments. The settlement distribution process is being administered by a neutral settlement administrator, [NAME], that was approved by the Court.

| 7. | What can I get from the proposed settlement? |

If you choose to join this settlement by submitting the Claim Form and Release provided along with this notice on or before [60/45 DAYS FROM SENDING NOTICE], you will receive a settlement payment. Your estimated settlement payment is $[AMOUNT]. Settlement payments will be mailed to participating individuals after all eligible individuals have had an opportunity to submit a claim. This process could take several months.

Each settlement payment will be separated into two amounts: fifty percent (50%) shall be allocated to the claims asserted in the lawsuit for unpaid wages; and fifty percent (50%) shall be allocated to the claims asserted in the lawsuit for liquidated damages. The portion allocated to claims for unpaid wages will be subject to all deductions authorized or required by law, just as if it were a regular paycheck. These include, but are not limited to: local, state and federal taxes, garnishments, child support orders, and tax levies/liens. The portion allocated to such claims for unpaid wages will be reported on an I.R.S. Form W-2. The portion allocated to liquidated damages will be treated as non-wage income and reported on an I.R.S. Form 1099. No taxes will be withheld from payments treated as non-wage income if you complete and return an I.R.S. Form W-9 along with your Claim Form and Release. If you do not return an I.R.S. Form W-9 the non-wage portion of any settlement payment will be subject to backup withholdings at a rate of twenty-four percent (24%).

Additionally, the portion of the total settlement fund that is approved by the Court to pay attorneys' fees and litigation expenses is considered to be payments made on behalf of all participating plaintiffs. Therefore, your *pro rata* portion of that amount will be reported as income to you on a separate I.R.S. Form 1099.

| 8. | What am I giving up in the settlement? |

If you join the settlement by submitting a Claim Form and Release on or before [60/45 DAYS FROM SENDING NOTICE], the Court's orders in this lawsuit will be binding upon you and you will be barred from bringing any action against EEG (including its predecessors, successors, parents, subsidiaries, and divisions, including their respective owners, officers, directors, employees, and agents ) that relate to hours worked or the payment of wages, except to the extent that any such claims may not be waived as a matter of law.

This release of claims against EEG specifically includes, without limitation:

> any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which you have or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages, except to the extent that any such claim may not be waived as a matter of law. The claims released by you specifically include, but are not limited to (i) any and all claims asserted in this Action; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, improper deductions, or any other wage-related claims, damages or relief of any kind, including recordkeeping related to wages, and including but not limited to those arising under the federal FLSA, 29 U.S.C. § 201, *et seq.*, the Virginia Overtime Wage Act, Va. Code §§ 40.1-29.1 (2021) & 40.1-29.2 (2022), the Virginia Wage Payment Act, Va. Code § 40.1-29, the Virginia Minimum Wage Act, Va. Code §§ 40.1-28.8, *et seq.*, and other equivalent state and local statutes or ordinances; (iii) any and all claims under state and federal law for earned wages, overtime, missed or interrupted meal breaks, and/or travel expenses, including such claims for breach of express contract or labor

agreement, implied contract, money had and received *in assumpsit*, *quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and/or failure to keep accurate records, (iv) any and all wage-and-hour laws or wage-related claims of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations.

This release has no application to any claim of any type arising on or after [DATE OF COURT'S APPROVAL ORDER].

Aside from the payments being made pursuant to this settlement, individuals participating in the settlement may not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted, settled, or released in this settlement, which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Defendant.

| 9. | **Are my legal rights affected if I *do not* join the settlement?** |
|---|---|

Yes. If you do not join this settlement by submitting the Claim Form and Release on or before [60/45 DAYS FROM SENDING NOTICE], you will not receive a settlement payment. However, you also will not release any claims that you may have against EEG and will not be bound by the Court's order in this lawsuit.

| 10. | **Does the plaintiff who brought the lawsuit receive any additional payment?** |
|---|---|

Yes. The Court approved a "General Release Award" payment of $5,000.00 to plaintiff Evan Denham. In exchange for this additional payment, Denham is subject to additional conditions as part of the settlement Specifically, he provided EEG a broader release of any and all claims he may have against the company in connection with his employment, agreed to keep all non-public terms of the settlement confidential, and agreed not to apply for future employment with EEG.

# HOW TO JOIN OR EXCLUDE YOURSELF FROM THE SETTLEMENT

| 11. | **How can I join the settlement?** |
|---|---|

In order to join the settlement and receive a settlement payment, you must timely complete, and sign the enclosed Claim Form and Release and return it to the settlement administrator by email ([EMAIL ADDRESS]) or U.S. Mail. Additionally, if you opt to join the settlement, you must complete and return the enclosed I.R.S. Form W-9 in order to avoid back-up tax withholdings on the portion of your settlement attributable to non-wage income.

In order to be considered timely, the completed Consent Form and Release and I.R.S. Form W-9 must be postmarked or received by the settlement administrator by no later than [60/45 DAYS FROM SENDING NOTICE].

If you lose, misplace, or need another copy of these form, you can contact the settlement administrator by email at [EMAIL ADDRESS] or by telephone at [PHONE NUMBER] to request a new copy.

| 12. | **How can I exclude myself from the settlement?** |
|---|---|

If you do nothing, you will not be included in the settlement. Anyone who does not timely submit the enclosed Claim Form and Release will not join the settlement. If you do not join the settlement, you will not receive a settlement payment, but you also will not release any claims you may have against EEG or be bound by the orders of the court in this lawsuit.

## THE LAWYERS REPRESENTING PLAINTIFF

| **13.** | **Do I have a lawyer in this case?** |
|---|---|

Plaintiff Evan Denham is represented in this case by the following attorneys:

> Craig J. Curwood, Esq.
> Zev Antell, Esq.
> BUTLER CURWOOD, PLC
> 140 Virginia Street, Suite 302
> Richmond, VA 23219

These attorneys have negotiated the settlement terms for all potential participants in the settlement. If you submit a Consent Form and Release, you will agree to be represented by Butler Curwood, PLC in connection with the lawsuit filed by plaintiff Evan Denham and this settlement.

| **14.** | **How will the lawyers be paid?** |
|---|---|

Under the terms of the parties' settlement agreement, and as approved by the Court, plaintiff's attorneys, Butler Curwood, PLC, will be paid 35% (*i.e.*, $111,300.00) of the Gross Settlement Amount to compensate them for their attorneys' fees, for investigating the facts, litigating the case, and negotiating the settlement. They also will receive reimbursement of their out-of-pocket costs and expenses in connection with the lawsuit. You will not have to pay the attorneys any of their fees, costs or expenses. You should consult with a tax professional regarding the taxability and any applicable deductions regarding the payment of such attorneys' fees.

## NO RETALIATION OR DISCRIMINATION

| **15.** | **If I am a current employee, will I experience any retaliation or discrimination for participating in the settlement?** |
|---|---|

No. It is against the law to retaliate or discriminate against an employee who decides to participate in this settlement. Moreover, EEG has a strict non-retaliation policy. Defendant will not discriminate or retaliate against you in any way because of your decision to participate in the lawsuit or this settlement.

## ADDRESS CHANGES

| **16.** | **What if my address changes?** |
|---|---|

It is your responsibility to inform the settlement administrator of your correct address. Please mail any change of address, along with the last four digits of your Social Security Number, former address, and new address to *Denham v. EEG Settlement,* c/o [SETTLEMENT ADMINISTRATOR ADDRESS] or call [PHONE NUMBER].

## GETTING MORE INFORMATION

| **29.** | **How can I get more information about the settlement and the case?** |
|---|---|

This notice summarizes the basic terms of the settlement. Further details of the settlement are contained in the parties' Joint Stipulation and Settlement Agreement. You may contact the Settlement Administrator at [PHONE NUMBER] to request a copy of the Joint Stipulation and Settlement Agreement. If you want to ask questions, you may also contact Plaintiff's counsel whose contact information is provided in Section 13.

**PLEASE DO NOT CALL THE COURT ABOUT THIS SETTLEMENT**.

*Denham v. Eight Eleven Group*
**Joint Stipulation & Settlement Agreement**
# Exhibit 3
**<u>Text Message Notice of Settlement</u>**


A settlement has been reached in a lawsuit alleging unpaid wages by Eight Eleven Group, which you may be eligible to participate in. For details, visit: [INSERT LINK].

*Denham v. Eight Eleven Group*
**Joint Stipulation & Settlement Agreement**
# Exhibit 4
**Claim Form and Release**

<<Class Member Name>>
<<Street Address>>
<<City, State Zip>>

## CLAIM FORM AND RELEASE

***DEADLINE****: To receive your settlement payment, you must join this lawsuit and its settlement by completing, signing, and returning this Claim Form. Your Claim Form must be postmarked by* **[60/45 DAYS FROM DATE OF MAILING***] if sent by U.S. Mail or must be received by that date if returned by email (*[EMAIL ADDRESS]*).*

<u>CONSENT TO JOIN & AGREEMENT TO BE BOUND BY RELEASE:</u>

I am over the age of eighteen (18) and competent to consent and to hereby consent and agree to join the civil action *Evan Denham, et al. v. Eight Eleven Group, LLC,* No. 3:22-cv-00531-JAG (the "Action"), which is currently pending in the U.S. District Court for the Eastern District of Virginia and to be bound by any adjudication of the Action by the Court. In consideration for a Settlement Payment, the gross amount of which is estimated at $[**ESTIMATED INDIVIDUAL SETTLEMENT PAYMENT**], I agree to be bound by the collective action settlement and release approved by the Court in the Action, as contained in the parties' Joint Stipulation and Settlement Agreement, and to be enjoined from further pursuing the released claims.

I agree to forever completely settle, compromise, release, and discharge Defendant Eight Eleven Group, LLC, including any of its predecessors, successors, parents, subsidiaries, and divisions, including their respective owners, officers, directors, employees, and agents from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action arising on or before [DATE OF APROVAL], whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any of them has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages, except to the extent that any such claim may not be waived as a matter of law. The claims released specifically include, but are not limited to: (i) any and all claims asserted in this Action; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, improper deductions, or any other wage-related claims, damages or relief of any kind, including recordkeeping related to wages, and including but not limited to those arising under the federal FLSA, 29 U.S.C. § 201, *et seq.*, the Virginia Overtime Wage Act, Va. Code §§ 40.1-29.1 (2021) & 40.1-29.2 (2022), the Virginia Wage Payment Act, Va. Code § 40.1-29, the Virginia Minimum Wage Act, Va. Code §§ 40.1-28.8, *et seq.*, and other equivalent state and local statutes or ordinances; (iii) any and all claims under state and federal law for earned wages, overtime, missed or interrupted meal breaks, and/or travel expenses, including such claims for breach of express contract or labor agreement, implied contract, money had and received *in assumpsit*, *quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and/or failure to keep accurate records, (iv) any and all wage-and-hour laws or wage-related claims of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations.

I further covenant and agree that, since I am settling disputed claims, I will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted or settled in the Action, which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Defendant Eight Eleven Group, LLC. I further acknowledge that I am enjoined from pursuing any claim settled, compromised, released, and/or discharged as part of the settlement of the Action.

I hereby designate Butler Curwood, PLC to represent me in connection with the Action.

Signature:_____Date:_____

Print:_____
                              First                        Middle              Last

Former (Maiden) Names worked under, if any:_____

**Note: Your address and other identifying information will be kept confidential and will not be filed with the Court.**

_____

Street Address

_____

City                                       State          Zip Code

Email Address: _____

Home phone:_____    Cell phone: _____